No. 25-1140

In the
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

KUSHAWN S. MILES-EL,

   PLAINTIFF - APPELLANT

V.

STATE OF MICHIGAN, individual and official capacities; MICHIGAN
DEPARTMENT OF CORRECTIONS, official capacities; BUREAU OF
HEALTH CARE SERVICES, individual and official capacities; ADAM
PANCHERI, Prisoner Counselor, individual and official capacities;
SARAH SCHROEDER, Warden, individual and official capacities;
DEAN POTILA, Deputy Warden, ADA Coordinator, individual and
official capacities

   DEFENDANTS – APPELLEES,

AND

HEIDI E. WASHINGTON, MDOC DIRECTOR, INDIVIDUAL AND
OFFICIAL CAPACITIES, ET AL.

   DEFENDANTS

Appeal from the United States District Court
Western District of Michigan, Northern Division
Honorable Jane M. Beckering

**BRIEF FOR DEFENDANTS-APPELLEES**

Joshua S. Smith (P63349)
Adam P. Sadowski (P73864)
Assistant Attorneys General

Counsel of Record
Attorneys for Defendants-Appellees
Corrections Division
P.O. Box 30217
Lansing, MI  48909
(517) 335-3055

Dated: December 30, 2025

## CORPORATE DISCLOSURE

State government and state agencies are excepted from filing a corporate affiliate/financial interest disclosure statement.

# TABLE OF CONTENTS

Page

Corporate Disclosure .................................................................. i

Table of Contents .................................................................... ii

Table of Authorities ................................................................. v

Statement in Support of Oral Argument ............................... xiv

Jurisdictional Statement ........................................................... 1

Statement of Issues Presented ................................................. 2

Introduction ............................................................................... 4

Statement of the Case ............................................................... 6

      A.    Background facts .......................................................... 6

      B.    Miles-El's complaint and the district court's screening decision ...................................................... 9

      C.    Defendants' motion for summary judgment and Miles-El's response .................................................. 11

      D.    The report and recommendation, Miles-El's objections, and the district court's order of dismissal ............................ 14

Standard of Review ................................................................. 17

Summary of Argument ............................................................ 19

Argument .................................................................................. 21

I.    Miles-El lacks standing to raise an Eighth Amendment claim against Pancheri and he has abandoned several issues and Defendants on appeal. ................................................. 21

A.    Miles-El fails to establish Article III standing against Pancheri because he asserts no injury that is fairly traceable to, or redressable by, Pancheri. ...........................21

B.    The record shows that Pancheri lacked the authority to transfer Miles-El. ...................................................24

C.    Miles-El has abandoned his First Amendment claim and all claims against the Individual Defendants other than Pancheri. ....................................................28

II.  Miles-El failed to show that Pancheri violated the Eighth Amendment and Pancheri is protected by qualified immunity because Miles-El did not show that he violated a right that was clearly established at the time of his alleged injury. ........................................................................29

A.    Miles-El fails to show that Pancheri was personally involved in the alleged Eighth Amendment violation..........30

B.    Miles-El fails to satisfy the deliberate indifference test. ......31

1.    Miles-El failed to establish that he had a serious medical condition. ........................................32

2.    Miles-El failed to establish that Pancheri knew of and disregarded a serious medical condition. .............35

C.    Miles-El cannot overcome Pancheri's qualified immunity. ..............................................................38

1.    Miles-El failed to establish the violation of an Eighth Amendment right............................................39

2.    Pancheri did not violate a clearly established Eighth Amendment right............................................40

3.    The right at issue was not clearly established at the time of the alleged injury.......................................42

4.    Miles-El relies on inapposite case law.........................43

III.   Miles-El's ADA claim is barred by the Eleventh Amendment
       because he cannot establish a corresponding Eighth
       Amendment violation. ...................................................47

IV.    The district court's dismissal of Miles-El's ADA and RA
       claims should be affirmed because Miles-El failed to provide
       sufficient evidence to substantiate his claims. ..............51

       A.    Defendants did not forfeit any arguments, .........53

       B.    Miles-El failed to establish a prima facie case under
             the ADA and RA. ...................................................54

             1.   Miles-El failed to establish a qualifying disability. ....55

             2.   Miles-El failed to establish he was qualified for
                  the requested services. ..................................57

             3.   Miles-El failed to establish that he was denied
                  any services as a result of the alleged disability. ........58

             4.   Miles-El cannot establish an intentional
                  discrimination claim under the ADA. .........................58

             5.   Miles-El failed to establish that he was denied a
                  reasonable accommodation. .........................61

       C.    Miles-El cannot establish his RA claim because he
             cannot prove that the alleged discrimination was based
             solely on his alleged disability. ............................64

V.     The district court correctly refused to exercise supplemental
       jurisdiction over Miles-El's state law claims and there is no
       reason to revisit the issue should this case be remanded. ............65

Conclusion and Relief Requested ............................................68

Certificate of Compliance .......................................................69

Certificate of Service ...............................................................70

Designation of Relevant District Court Documents ...............71

iv

# TABLE OF AUTHORITIES

Page

## Cases

*Alabama v. Pugh,*
　438 U.S. 781 (1978) ............................................................... 47

*Ali v. Adamson,*
　132 F.4th 924 (6th Cir. 2025) ............................................ 21

*Anderson v. City of Blue Ash,*
　798 F.3d 338 (6th Cir. 2015) ....................................... 59, 62

*Anderson v. Creighton,*
　483 U.S. 635 (1987) ............................................................... 45

*Ashcroft v. al-Kidd,*
　563 U.S. 731 (2011) ......................................................... 40, 41

*Barker v. Goodrich,*
　649 F.3d 428 (6th Cir. 2011) ............................................ 41

*Barnhart v. Pickrel, Schaeffer, & Ebeling Co.,*
　12 F.3d 1382 (6th Cir. 1993) ............................................ 18

*Bazzetta v. McGinnis,*
　124 F.3d 774 (6th Cir. 1997), *supplemented,* 133 F.3d 382 (6th
　Cir. 1998) ............................................................................ 50

*Bell v. City of Southfield,*
　37 F.4th 362 (6th Cir. 2022) ................................. 40, 41, 46

*Bench Billboard Co. v. City of Cincinnati,*
　675 F.3d 974 (6th Cir. 2012) ............................................ 22

*Bennett v. Hurley Med. Ctr.,*
　86 F.4th 314 (6th Cir. 2023) ............................................ 59

*Bittel v. Yamato Int'l Corp.,*
　70 F.3d 1271 (6th Cir. 1995); ............................................ 22

*Blackmore v. Kalamazoo Cnty.*,
  390 F.3d 890 (6th Cir. 2004) ...................................................... 33, 34

*Bondex Int'l, Inc. v. Hartford Acc. & Indem. Co.*,
  667 F.3d 669 (6th Cir. 2011) .............................................................. 48

*Bryant v. Madigan*,
  84 F.3d 246 (7th Cir. 1996) ................................................................ 55

*Burnett v. Griffith*,
  33 F.4th 907 (6th Cir. 2022) ........................................................ 41, 46

*Butler v. Scholten*,
  No. 1:19-cv-449, 2019 WL 4126470, *7 (W.D. Mich. Aug. 30,
  2019) ...................................................................................................... 55

*Caldwell v. Moore*,
  968 F.2d 595 (6th Cir. 1992) .............................................................. 40

*Cannon v. Eleby*,
  187 F.3d 634 (6th Cir. 1999) .............................................................. 55

*Caraway v. CoreCivic of Tennessee, LLC*,
  98 F.4th 679 (6th Cir. 2024) .............................................................. 30

*Carbone v. Kaal*,
  140 F.4th 805 (6th Cir. 2025) ............................................................ 53

*Casillas v. Madison Ave. Assocs., Inc.*,
  926 F.3d 329 (7th Cir. 2019) .............................................................. 22

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .............................................................................. 17

*City of Boerne v. Flores*,
  521 U.S. 507 (1997) .............................................................................. 48

*City of Tahlequah, Okla. v. Bond*,
  595 U.S. 9 (2021) .................................................................................. 45

*Crawford v. Tilley*,
  15 F.4th 752 (6th Cir. 2021) ........................................................ 39, 43

*Dist. of Columbia v. Wesby,*
   583 U.S 48 (2018) ........................................................ 40

*Doe v. Lee,*
   102 F.4th 330 (6th Cir. 2024) ................................... 23

*EOG Res., Inc. v. Lucky Land Mgmt., LLC,*
   134 F.4th 868 (6th Cir. 2025) ................................... 54

*Ex parte Young,*
   209 U.S. 123 (1908) ................................................. 47

*Farmer v. Brennan,*
   511 U.S. 825 (1994) ..................................... passim

*Finley v. Huss,*
   102 F.4th 789 (6th Cir. 2024) ................................... 41

*Gamel v. City of Cincinnati,*
   625 F.3d 949 (6th Cir. 2010) .................................... 66

*Garretson v. City of Madison Heights,*
   407 F.3d 789 (6th Cir. 2005) .................................... 32

*Gohl v. Livonia Pub. Schs. Sch. Dist.,*
   836 F.3d 672 (6th Cir. 2016) .................................... 60

*Griffin v. Berghuis,*
   563 F. App'x 411 (6th Cir. 2014) ............................. 50

*Harden-Bey v. Rutter,*
   524 F.3d 789 (6th Cir. 2008) .................................... 31

*Harrison v. Ash,*
   539 F.3d 510 (6th Cir. 2008) .................................... 33

*Hayes v. Horton,*
   596 F. Supp. 3d 978 (E.D. Mich. 2022) ................... 49

*Hedrick v. W. Rsrv. Care Sys.,*
   355 F.3d 444 (6th Cir. 2004) ............................. 56, 57

*Helling v. McKinney,*
   509 U.S. 25 (1993) ......................................................... 43, 44

*Hudson v. McMillian,*
   503 U.S. 1 (1992) .................................................................. 31

*Hunt v. Reynolds,*
   974 F.2d 734 (6th Cir. 1992) ............................................... 44

*Jackson v. City of Cleveland,*
   925 F.3d 793 (6th Cir. 2019) ............................................... 17

*Johnson v. Moseley,*
   790 F.3d 649 (6th Cir. 2015) ............................................... 30

*Kennedy v. City of Villa Hills, Ky.,*
   635 F.3d 210 (6th Cir. 2011) ............................................... 54

*Kleiber v. Honda of Am. Mfg.,* Inc.,
   485 F.3d 862 (6th Cir. 2007) ............................................... 57

*Klein by Klein v. Caterpillar, Inc.,*
   684 F. Supp. 3d 610 (E.D. Mich. 2023), *aff'd,* No. 23-1762, 2024
   WL 1574672 (6th Cir. Apr. 11, 2024) .................................... 18

*Kowall v. Benson,*
   18 F.4th 542 (6th Cir. 2021) ................................................ 67

*Kubala v. Smith,*
   984 F.3d 1132 (6th Cir. 2021) ............................................. 24

*Lawson v. Creely,*
   137 F.4th 404 (6th Cir. 2025) ......................................... 53, 66

*Leary v. Daeschner,*
   228 F.3d 729 (6th Cir. 2000) ............................................... 54

*Lee v. City of Columbus, Ohio,*
   636 F.3d 245 (6th Cir. 2011) ................................... 56, 61, 65

*Libertarian Party of Ohio v. Wilhem,*
   988 F.3d 274 (6th Cir. 2021) ............................................... 22

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................... 22

*Luna v. Davis*,
  59 F.4th 713 (5th Cir. 2023) ........................................... 46

*Martinez v. Wayne Cnty., Mich.*,
  142 F.4th 828 (6th Cir. 2025) ........................................ 39

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) .......................................................... 17

*McDonnell Douglas Corporation v. Green*,
  411 U.S. 792 (1973) .......................................................... 58

*Meachum v. Fano*,
  427 U.S. 215 (1976) .......................................................... 50

*Mingus v. Butler*,
  591 F.3d 474 (6th Cir. 2010) ..................................... 47, 48

*Montanye v. Haymes*,
  427 U.S. 236 (1976) .......................................................... 50

*Moore v. Philip Morris Cos.*,
  8 F.3d 335 (6th Cir. 1993) ............................................... 17

*Mullenix v. Luna*,
  577 U.S. 7 (2015) ............................................................... 42

*Murray v. Dep't of Corrections*,
  29 F.4th 779 (6th Cir. 2022) .......................................... 40

*Nance v. Goodyear Tire & Rubber Co.*,
  527 F.3d 539 (6th Cir. 2008) .......................................... 64

*O'Hara v. Wigginton*,
  24 F.3d 823 (6th Cir. 1994) ............................................ 47

*Olmstead v. Fentress Cnty. Tenn.*,
  No. 19-5447, 2019 WL 8631807, at *2 (6th Cir. Nov. 27, 2019) .......... 31

*Parker v. Metro. Life Ins. Co.*,
   121 F.3d 1006 (6th Cir. 1997) ....................................... 60

*Pearson v. Callahan*,
   555 U.S. 223 (2009) ............................................... 39, 41

*People v. Watson*,
   629 N.W.2d 411 (Mich. Ct. App. 2001) ............................ 49

*Phillips v. Tangilag*,
   14 F.4th 524 (6th Cir. 2021) ....................................... 34

*Phillips v. UAW Int'l*,
   854 F.3d 323 (6th Cir. 2017) ...................................... 19

*Pilgrim v. Littlefield*,
   92 F.3d 413 (6th Cir. 1996) ....................................... 18

*Plumhoff v. Rickard*,
   572 U.S. 765 (2014) ............................................... 42, 45

*Priddy v. Edelman*,
   883 F.2d 438 (6th Cir. 1989) .............................. 28, 29, 67

*Reed-Bey v. Pramstaller*,
   607 F. App'x 445 (6th Cir. 2015) ................................. 46

*Reedy v. West*,
   988 F.3d 907 (6th Cir. 2021) ...................................... 32

*Rhinehart v. Scutt*,
   894 F.3d 721 (6th Cir. 2018) ..................................... 31, 32

*Rhodes v. Chapman*,
   452 U.S. 337 (1981) ............................................... 31, 32

*Rivas-Villegas v. Cortesluna*,
   595 U.S. 1 (2021) ................................................. 42

*Rizzo v. Goode*,
   423 U.S. 362 (1976) ............................................... 30

*S.S. v. E. Ky. Univ.*,
   532 F.3d 445 (6th Cir.2008) ................................................................ 51

*Santiago v. Ringle*,
   734 F.3d 585 (6th Cir. 2013) .............................................................. 32

*Shehee v. Luttrell*,
   199 F.3d 295 (6th Cir. 1999) .............................................................. 24

*Sjostrand v. Ohio State Univ.*,
   750 F.3d 596 (6th Cir. 2014) .............................................................. 59

*Smith v. Leggett Wire Co.*,
   220 F.3d 752 (6th Cir. 2000) .............................................................. 61

*Sommer v. Davis*,
   317 F.3d 686 (6th Cir. 2003) ................................................ 28, 29, 67

*Spears v. Ruth*,
   589 F.3d 249 (6th Cir. 2009) .............................................................. 56

*Stanley v. W. Michigan Univ.*,
   105 F.4th 856 (6th Cir. 2024) ............................................................ 47

*Starcher v. Corr. Med. Sys., Inc.*,
   7 F. App'x 459 (6th Cir. 2001) .......................................................... 30

*Stiles ex rel. D.S. v. Grainger Cnty., Tenn.*,
   819 F.3d 834 (6th Cir. 2016) .............................................................. 18

*Stoudemire v. Mich. Dep't of Corr.*,
   705 F.3d 560 (6th Cir. 2013) .............................................................. 47

*Street v. J.C. Bradford & Co.*,
   886 F.2d 1472 (6th Cir. 1989) ........................................................... 18

*Talal v. White*,
   403 F.3d 423 (6th Cir. 2005) .............................................................. 44

*Tchankpa v. Ascena Retail Grp., Inc.*,
   951 F.3d 805 (6th Cir. 2020) ...................................................... 56, 63

*Tennessee v. Lane,*
   541 U.S. 509 (2004) ..................................................... 48, 49

*Texas Democratic Party v. Abbott,*
   978 F.3d 168 (5th Cir. 2020) ............................................ 53

*TransUnion LLC v. Ramirez,*
   594 U.S. 413 (2021) ......................................................... 21

*Tucker v. Tennessee,*
   539 F.3d 526  (6th Cir. 2008) .......................................... 62

*Tucker v. Union of Needletrades, Indus. & Textile Emps.,*
   407 F.3d 784 (6th Cir. 2005) ........................................... 18

*Turner v. City of Englewood,*
   195 F. App'x 346 (6th Cir. 2006) ..................................... 64

*Turner v. City of Englewood,*
   195 F. App'x 346 (6th Cir. 2006) ..................................... 59

*United States v. Georgia*, 546 U.S. 151, 159 (2006).......................... 47, 48

*United States v. Health Possibilities, P.S.C.,*
   207 F.3d 335 (6th Cir. 2000) ........................................... 22

*Universal Life Church Monastery Storehouse v. Nabors,*
   35 F.4th 1021 (6th Cir. 2022) .......................................... 23

*Verkade v. U.S. Postal* Service,
   378 F. App'x 567 (6th Cir. 2010) ..................................... 64

*Viet v. Le,*
   951 F.3d 818 (6th Cir. 2020) ........................................... 26

*White v. Pauly,*
   580 U.S. 73, 79 (2017) .................................................... 42

*Williams v. AT&T Mobility Servs. LLC,*
   847 F.3d 384 (6th Cir. 2017) ........................................... 61

*Wilson v. Williams,*
  961 F.3d 829, 840 (6th Cir. 2020) ........................................ 31

*Winkler v. Madison Cty.,*
  893 F.3d 877 (6th Cir. 2018) ............................................. 56

**Statutes**

28 U.S.C. § 1291 ............................................................. 1

28 U.S.C. § 1331 ............................................................. 1

28 U.S.C. § 1367(c)(1) ..................................................... 67

28 U.S.C. §§ 1915(e)(2) ................................................... 10

29 U.S.C. § 701 ............................................................. 10

42 U.S.C. § 12102(1)(A) .................................................. 56

42 U.S.C. § 12131 .......................................................... 10

42 U.S.C. § 1997e(c) ....................................................... 10

Mich. Comp. Laws § 37.1101 ............................................ 10

**Other Authorities**

Americans with Disabilities Act (ADA) ........................... 10, 58

Mich. Const. 1963, art I, §§ 3 and 16 ............................... 10

Michigan's Persons with Disabilities Civil Rights Act (PWDCRA) ....... 10

Prison Litigation Reform Act .......................................... 10

Rehabilitation Act (RA) ................................................. 10

**Rules**

Fed. R. App. P. 34(a)(2)(C) ............................................ xiv

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Defendants-Appellees Adam Pancheri, the State of Michigan, the Michigan Department of Corrections (MDOC), and the Bureau of Health Care Services (BHCS),[1] disagree with Plaintiff-Appellant Kushawn Miles-El statement in support of oral argument. This case does not present complex and important issues of law in this Circuit. Accordingly, the parties' briefs and the district court record adequately present the facts and legal arguments before the Court, and oral argument would not significantly aid this Court's decision process. Fed. R. App. P. 34(a)(2)(C). If this Court grants oral argument, however, Defendants request an opportunity to present argument on the issues in this appeal.

---

[1] Defendants State of Michigan, MDOC, and BHCS will be collectively referred to as "State Defendants."

# JURISDICTIONAL STATEMENT

The district court had jurisdiction over Miles-El's federal claims because he raised federal questions, 28 U.S.C. § 1331. The district court had supplemental jurisdiction over Miles-El's state-law claims pursuant to 28 U.S.C. § 1367. The district court's order granting Defendants' motion for summary judgment constitutes a final order because it dismissed all of Miles-El's remaining claims. (Order Granting Defs.' MSJ, R. 48, Page ID # 498–504.) Miles-El timely filed a notice of appeal from this order, giving this Court appellate jurisdiction under 28 U.S.C. § 1291. (Notice of Appeal, R. 50, Page ID # 506.)

# STATEMENT OF ISSUES PRESENTED

1.      Unless Miles-El can establish standing, including injuries that are traceable to, and redressable by, Pancheri, his Eighth Amendment claim must be dismissed. Here, Miles-El claims that he was injured by Pancheri's transfer decisions, but Pancheri lacked the authority to transfer Miles-El. Should his Eighth Amendment appeal be dismissed for lack of standing?

2.      To maintain an Eighth Amendment claim, Miles-El must show that Pancheri violated the Eighth Amendment and that Pancheri violated a right that was clearly established at the time of his alleged injury. Miles-El failed to show that Pancheri violated the Eighth Amendment or that he violated a clearly established right. Should this Court affirm the dismissal of Miles-El's Eighth Amendment claim?

3.      To overcome the State Defendants' Eleventh Amendment immunity on his ADA claim, Miles-El must have a viable Eighth Amendment claim. As discussed above, Miles-El lacks standing to assert an Eighth Amendment claim and fails to show the violation of an Eighth Amendment right that was clearly established at the time of his alleged injury. Should this Court affirm the dismissal of Miles-El's ADA claim?

4.      Claims under both the ADA and the RA require a showing of discrimination against a person because of a disability. Miles-El did not produce evidence showing that the State Defendants discriminated against him based on his disability. Should this Court affirm the dismissal of Miles-El's' ADA and RA claims because he failed to provide sufficient evidence to substantiate his claims?

5.      District courts must decline to exercise supplemental jurisdiction over state law claims when they have dismissed the underlying federal claims. Nor should district courts

revisit supplemental jurisdiction on remand when the record supports other reasons for dismissing those claims. Should this Court affirm the denial of supplemental jurisdiction and decline to order the district court to reconsider if it remands this case?

## INTRODUCTION

Miles-El claims to have suffered from asthma and a dog allergy for several years and filed suit alleging that he should not be housed in a facility with a dog program. Despite his claims, however, Miles-El did have a medical detail that would have prevented him from being housed in a facility that had a dog program. He now tries to blame Pancheri and the State Defendants for this failure. This Court should decline Miles-El's invitation to evade responsibility and instead affirm the district court's grant of summary judgment to Defendants.

Miles-El's claim fails at the outset because he cannot establish Article III standing. Miles-El faults Pancheri for his transfer decisions. But that claim has a problem—namely, that Pancheri had no authority to transfer Miles-El. Miles-El admitted this in his district court filings, but now argues to the contrary, offering nothing other than his own allegations and a declaration that, at best, show that Pancheri didn't like Miles-El. That fails to sustain Miles-El's Article III burden.

Miles-El also failed to establish an Eighth Amendment claim or overcome Pancheri's qualified immunity. Miles-El made no showing of Pancheri's personal involvement or that he caused Miles-El's claimed

injury.  Nor did Miles-El establish that Pancheri was deliberately indifferent to a serious medical condition.  Miles-El claims he has severe asthma, but he never submitted a diagnosis from a doctor.  He instead relies on a generic medical record but never shows that Pancheri saw or was even aware of it.  Nor did Miles-El's evidence show that his condition was obvious or that Pancheri even observed his symptoms. Only by misconstruing the record evidence does Miles-El get close to showing Pancheri was subjectively aware that he had asthma.  The actual evidence, however, shows nothing of the sort.

Moreover, Miles-El failed to show that Pancheri violated a clearly established right, relying on inapposite case law that has no bearing on the issues in the present case.  Simply put, no case law in this Circuit has held that refusing to transfer a prisoner with asthma to a facility without a dog program or transferring that prisoner to a facility with a dog program violates the Eighth Amendment.  Because Miles-El must establish both prongs of the qualified immunity test—both that Pancheri violated the Eighth Amendment and that the right was clearly established at the time of the alleged injury—qualified immunity applies.

Miles-El's ADA claims fail because, without an Eighth

Amendment claim, he cannot overcome the State Defendants' Eleventh

Amendment immunity. To the extent that he does, Miles-El's ADA and

RA claims fail because he did not sustain his burden to show a genuine

issue of material fact. Miles-El did not show that the State Defendants

discriminated against him because of his disability, directly or

indirectly. Instead, they denied his requested accommodation because

he lacked a medical detail authorizing it.

Finally, having no surviving federal claims, there is no basis for

supplemental jurisdiction over his state-law claims. Miles-El provides

no reason to reverse the district court, and this Court should affirm.

## STATEMENT OF THE CASE

### A. Background facts

Miles-El is currently on parole,[2] but during the times relevant to

this lawsuit, he was a prisoner under the jurisdiction of the MDOC. (Pl.

OTIS, R. 34-2, Page ID # 342–344.) Some MDOC facilities include dog

---

[2] See
https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=23701
1 (last accessed December 13, 2025).

programs, which prisoners may participate in as part of their rehabilitation.[3]  Miles-El alleges that he has asthma and suffers from allergies caused by exposure to dog dander, and claims that he cannot be housed at a facility that has a dog program.  (Comp., R. 1, Page ID # 4, 6–7, ¶¶ 11, 23, 28.)  But at the times relevant to this lawsuit, Miles-El never had a medical detail preventing him from being housed in a facility that had a dog program, which he admitted in an attachment to his complaint and at his deposition.  (MDOC Memorandum, R. 1-16, Page ID # 40; Miles-El Dep., R. 34-3, Page ID # 358:3-11; Potila Dec., R. 34-5, Page ID # 369, ¶ 7, 9.)

Miles-El arrived at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan, in October 2017.  (Miles-El Dep., R. 34-3, Page ID # 353:10-18.)  MDOC transferred Miles-El to the Alger Correctional Facility (LMF) in Munising, Michigan on February 10, 2020.  (Petersen Dec., R, 34-7, Page ID # 377–378, ¶ 12–13.)  MDOC next transferred Miles-El to the Kinross Correctional Facility (KCF), also in Kincheloe, on July 21, 2021.  (R. 1, Page ID # 12, ¶ 76.)

---

[3] See https://www.michigan.gov/corrections/our-impact/mdoc-dogs (last accessed December 19, 2025).

At the time of the events set forth in the complaint, Adam Pancheri was a Prison Counselor at URF. (Pancheri Dec., R. 34-4, Page ID # 365, ¶ 4.) Dean Potila was an Acting Assistant Deputy Warden, the Americans with Disabilities Act Coordinator, and the Administrative Assistant to the Warden at LMF, and Sarah Schroeder was the Warden at LMF. (Potila Dec., R. 34-5, Page ID # 368, ¶ 4; Schroeder Dec., R. 34-6, Page ID # 372, ¶ 4.)

Prior to his arrival at URF, Miles-El alleges that he had problems with exposure to dogs at the Muskegon Correctional Facility. (R. 1, Page ID # 6, ¶ 22.) Upon his transfer to URF, MDOC housed Miles-El in a Security Level II housing unit known as Spruce Unit. (R. 34-3, Page ID # 355:3-4.) Miles-El was housed on a different wing from the dog program. (R. 34-6, Page ID # 373, ¶ 12.)

Miles-El filed a grievance after arriving at LMF regarding his exposure to the dogs in Spruce Unit. (Grievance, R. 34-8, Page ID # 382.) Schroeder responded to the grievance, indicating that she reached out to Physician's Assistant (PA) Amy Westcomb, who advised that Miles-El could be housed in Spruce Unit. (R. 34-6, Page ID # 373, ¶ 7; Grievance No. LMF-20-02-0169-17i, R. 34-8, Page ID # 383.) Miles-El

admitted that while he was at LMF that he never had a medical detail that prohibited him from being housed with dogs.  (R. 34-3, Page ID # 358:3-11.)  Even though he lacked a medical detail, Miles-El was provided with a mask to wear.  (R. 34-6, Page ID # 373, ¶ 14.)

Miles-El asked to be housed in a Security Level II housing unit without dogs.  (R. 1–15, Page ID # 39.)  Because Spruce Unit was the only Security Level II housing unit at LMF that effectively meant Miles-El wanted a transfer.  (R. 34-3, Page ID # 354:18–355:11.)  Potila denied the request because Miles-El did not have a medical detail, which can only be given by a healthcare provider, that required him to be separated from the dog program.  (R. 1–16, Page ID # 40; R. 34-5, Page ID # ¶ 9.)  Potila could not provide Miles-El with a medical detail and believed that Miles-El was properly housed in Spruce Unit.  (R. 34-5, Page ID # 369, ¶ 9.)

## B.    Miles-El's complaint and the district court's screening decision

Miles-El filed his complaint on February 13, 2023.  (R. 1, Page ID # 1–47.)  Miles-El named Pancheri, Potila, Schroeder, MDOC Director Heidi Washington, and MDOC Transfer Coordinator Laura Heinritz as defendants.  (R. 1, Page ID # 2–3.)  Miles-El also named the State of

Michigan, MDOC, and BHCS, and an unknown insurance company. (*Id*.)

Miles-El alleged that Defendants violated his rights under the First and Eighth Amendments, the Michigan Constitution (Mich. Const. 1963, art I, §§ 3 and 16), the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq.*, the Rehabilitation Act (RA), 29 U.S.C. § 701 *et seq.*, and Michigan's Persons with Disabilities Civil Rights Act (PWDCRA), Mich. Comp. Laws § 37.1101 *et seq.*  (R. 1, Page ID # 4–6, 18.)  Miles-El sought declaratory and injunctive relief, in addition to compensatory and punitive damages.  (R. 1, Page ID # 18–19.)

On August 21, 2023, the district court issued a screening decision pursuant to the Prison Litigation Reform Act, 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c), dismissing all the claims against Heinritz, Director Washington, and the unknown insurance company.  (R. 9, Page ID # 72–92.)  The district court allowed Miles-El's First and Eighth Amendment claims to proceed against Pancheri, Potila, and Schroeder (collectively "the Individual Defendants").  (*Id*.)  It also allowed Miles-El's ADA and RA claims to proceed against the State Defendants, and

his state-law claims to go forward against Pancheri, Potila, Schroeder, and the State Defendants. (*Id.*)

### C. Defendants' motion for summary judgment and Miles-El's response

Following discovery, Defendants moved for summary judgment. (Defs.' MSJ, R. 34, Page ID # 319–340.) Defendants argued that Miles-El's First Amendment retaliation claims failed because he was unable to prove that an adverse action had occurred, and that the Eighth Amendment claims should be dismissed because Miles-El did not show that Defendants were deliberately indifferent to a serious medical need, or that Pancheri, who lacked authority to transfer Miles-El, was personally involved in the alleged violation. (*Id.*, Page ID # 325–332.) Defendants argued that the State Defendants were entitled to sovereign immunity on Miles-El's ADA and RA claims because he did not anchor them to a viable Eighth Amendment claim. (R. 34, Page ID # 332–335.) Moreover, Miles-El did not allege discrimination on the basis of his alleged disability. (*Id.*, Page ID # 332–335.)

Defendants also contended that Miles-El's state-law claims were defective. First, his claims under the Michigan Constitution required dismissal because he had a separate avenue for relief under § 1983.

11

(*Id.*, Page ID # 336.)  And all claims made directly against the State

Defendants, including Miles-El's PWDCRA claim, were barred by the

Eleventh Amendment.  (*Id.*, Page ID # 336–337.)  Lastly, any claims for

declaratory or injunctive relief were moot because Miles-El was no

longer housed at the facility where his alleged injuries occurred.  (*Id.*,

Page ID # 337.)  In support of their motion for summary judgment,

Defendants submitted evidence that included Miles-El's OTIS page,

deposition excerpts, declarations from Pancheri, Potila, Schroeder, and

MDOC Transfer Coordinator Debra Petersen, and grievances submitted

by Miles-El.  (R. 34-1–34-8, Page ID # 340–384.)

Miles-El's response relied largely on conclusory allegations rather

than substantive evidence and concentrated on his First Amendment

retaliation claims, which he did not appeal.  (Pl.'s Resp. MSJ, R. 36,

Page ID # 387–394.)  He did, however, submit two items of evidence to

support his argument.

First, he included a declaration from fellow prisoner Loren Slough.

(Slough Dec., R. 36-1, Page ID # 400.)  The Slough Declaration focused

on the retaliation claims, discussing grievances and the allegation that

Pancheri did not like Miles-El because Miles-El filed grievances on him.

(*Id*.)  Second, he offered a single page of a medical record from January 19, 2017, stating that Miles-El complained of having asthma and that it could be aggravated by "animals, change in weather, exercise and pollen."  (MDOC BHCS Record, R. 36-3, Page ID # 403.)  Miles-El, however, did not submit any evidence showing that Defendants had ever seen or were even aware of this medical record, or that the medical record reflected the diagnosis of a doctor.  Despite living in a unit with a dog program for over a year, Miles-El failed to submit any contemporaneous medical records from his time in the unit to establish that he suffered any harm or that he was attempting to get treatment for his allergies.

Miles-El also cited little caselaw in support of his argument.  (*Id*., Page ID # 394–395.)  Miles-El argued that the state constitutional torts should not be dismissed because 28 U.S.C. § 1367(a) gives the district court supplemental jurisdiction; he did not address the other arguments raised by Defendants.  (*Id*., Page ID # 396.)  Miles-El agreed that he did not seek punitive damages under the ADA or RA, and asserted, without argument or authority, that the Eleventh Amendment does not grant

the State Defendants immunity. (*Id.*) Defendants replied to Miles-El's arguments. (Defs.' Reply Supp. MSJ, R. 40, Page ID # 412–423.)

**D.    The report and recommendation, Miles-El's objections, and the district court's order of dismissal**

On October 31, 2024, the magistrate judge issued a report and recommendation (R&R) recommending that the district court grant Defendants' motion for summary judgment. (R&R, R. 45, Page ID # 446.) The R&R recommended dismissal of Miles-El's First Amendment retaliation claim because Pancheri never took an adverse action against him. (*Id.*, Page ID # 452–455.) The R&R found that Schroeder and Potila had sought medical guidance from medical professionals, and both were told that it was appropriate for Miles-El to remain in the unit. (*Id.*, Page ID # 457–458.) The R&R also found that "Defendants informed Miles-El that if he could get a medical detail for placement away from the LMF dog program, he would be accommodated." (*Id.*) The R&R held that non-medical personnel may rely on the assessments made by medical staff. (*Id.*, Page ID # 460.)

The R&R recommended dismissal of the ADA and RA claims because Miles-El did not allege that Defendants had discriminated against him based on a disability. (*Id.*, Page ID # 463.) Rather, he

14

claimed "that Defendants should have transferred him to a new prison due to his assertion that he was allergic to dog dander despite medical staff indicating that he was appropriately housed for his medical condition." (*Id*.) Importantly, the R&R found that "Miles has not provided allegations much less evidence that he was denied the benefits of prison services or programs." (*Id*.) The R&R found that, with dismissal of the federal claims, the state law claims should be dismissed as the Court should not exercise supplemental jurisdiction. (*Id*., Page ID # 464–465.)

Miles-El filed objections to the R&R. (Pl.'s Objs., R. 46, Page ID # 466–483.) Like his response brief, he focused on his First Amendment retaliation claims. (*Id*., Page ID # 466–477.) His objections to the recommended dismissal of his Eighth Amendment claims did not cite any caselaw, instead relying mostly on block quotes from previous documents. (*Id*., Page ID # 477–480.) Interestingly, he relied on the allegation in his complaint that Defendants and "health care officials" had "failed to take any action to alleviate the threat" to his health. (*Id*., Page ID # 478, citing R. 1, Page ID # 9.) Miles-El did not sue any healthcare professionals or staff.

Miles-El's objections to the recommendation to dismiss his ADA and RA claims reiterated prior allegations and asserted that his claims were not for inadequate medical treatment but for an accommodation. (R. 46, Page ID # 481–482.) At no time did Miles-El address his lack of a medical detail, nor did he cite any medical records establishing that he had a dog allergy.

The district court adopted the R&R in full and overruled Miles-El's objections on January 31, 2025. (Order Adopting R&R, R. 48, Page ID # 498–504.) As to the Eighth Amendment claims, Defendants were entitled to summary judgment because "they sought the advice of prison medical staff, who informed them that Plaintiff was appropriately housed and did not need to transfer due to medical reasons." (*Id.*, Page ID # 502.) The district court held that Miles-El neither addressed nor demonstrated any error in the magistrate judge's analysis. (*Id.*) Similarly, Miles-El failed to meet his evidentiary burden on his ADA and RA claims and "fail[ed] to address – let alone identify error in – the Magistrate Judge's determination that Plaintiff did not support his evidentiary burden." (*Id.*, Page ID # 503.) With the federal claims

dismissed, the district court declined to exercise supplemental jurisdiction of Miles-El's state-law claims. (*Id.*)

Miles-El's timely notice of appeal followed. (R. 50.)

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment de novo. *Jackson v. City of Cleveland*, 925 F.3d 793, 806 (6th Cir. 2019). A grant of summary judgment must be affirmed where evidence shows "no genuine issue as to any material fact[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotations and citation omitted).

Once the movant meets his initial burden, the burden then shifts to the non-movant to establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). This showing must create more than a merely "metaphysical doubt as to the material facts," *id.*, and cannot be met by resting on the pleadings, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-movant must present "significant probative evidence," *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993), "identify[ing] specific facts in the record raising a genuine issue for trial

in order to defeat the motion for summary judgment," *Stiles ex rel. D.S. v. Grainger Cnty., Tenn.*, 819 F.3d 834, 847 (6th Cir. 2016).

The non-movant "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence[.]" *Barnhart v. Pickrel, Schaeffer, & Ebeling Co.*, 12 F.3d 1382, 1389 (6th Cir. 1993) (cleaned up). And courts will not "search the entire record" to create a genuine issue of material fact for the non-movant. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989).

Although courts apply a lenient standard to pro se pleadings, "pro se plaintiffs are not automatically entitled to take every case to trial." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Accordingly, that lenient standard does not apply at the summary judgment stage. *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005); *Klein by Klein v. Caterpillar, Inc.*, 684 F. Supp. 3d 610, 618 (E.D. Mich. 2023), *aff'd*, No. 23-1762, 2024 WL 1574672 (6th Cir. Apr. 11, 2024).

This Court "may affirm a decision of the district court for any reason supported by the record, including on grounds different from

those on which the district court relied." *Phillips v. UAW Int'l,* 854 F.3d 323, 326 (6th Cir. 2017) (internal quotations and citation omitted).

## SUMMARY OF ARGUMENT

Miles-El only appeals the dismissal of his Eighth Amendment claim against Pancheri and his ADA and RA claims against the State Defendants; he does not appeal the dismissal of his First Amendment claims or his claims against any other individuals. This Court should affirm the dismissal of Miles-El's federal claims and the district court's decision not to exercise supplemental jurisdiction over his state-law claims.

Miles-El claims that Pancheri violated the Eighth Amendment by not transferring him to a facility without a dog program and by later transferring him to a facility with a dog program. But he lacks standing to raise an Eighth Amendment claim against Pancheri because Pancheri did not have the authority to transfer Miles-El. Accordingly, the injuries Miles-El claims are neither traceable to, nor redressable by, Pancheri, and thus cannot satisfy the requirements of Article III.

Even if Miles-El has standing, he cannot show that Pancheri violated the Eighth Amendment because he failed to show Pancheri's personal involvement. He also failed to sustain his burden of producing sufficient evidence to create a genuine issue of material fact, instead relying on conclusory allegations and little else. And Miles-El cannot overcome Pancheri's qualified immunity because he did not show that Pancheri was deliberately indifferent to a serious medical need, or that Pancheri violated a clearly established right.

Miles-El's ADA and RA claims also fail. As a threshold matter, Miles-El cannot overcome the State Defendants' Eleventh Amendment immunity to an ADA claim because he lacks a viable Eighth Amendment claim. Nor did Miles-El show that State Defendants discriminated against him based on his disability, directly or indirectly.

Finally, the district court correctly declined to exercise supplemental jurisdiction over Miles-El's state-law claims because it properly dismissed his federal claims. Should this Court remand, additional factors weigh in favor of dismissing the state-law claims. This Court should affirm the district court.

# ARGUMENT

## I. Miles-El lacks standing to raise an Eighth Amendment claim against Pancheri and he has abandoned several issues and Defendants on appeal.

Miles-El claims that Pancheri violated the Eighth Amendment by not transferring him to a housing unit without dogs and by transferring him to a facility that also housed dogs. (Pl.'s Appeal Br., RE. 14, pp. 49–50.) Because Pancheri lacked the authority to transfer Miles-El, however, any injury suffered by Miles-El is not fairly traceable to Pancheri. Nor can damages from Pancheri redress injuries that he did not cause. As such, Miles-El lacks standing to raise this claim and this Court must dismiss his appeal. *Ali v. Adamson*, 132 F.4th 924, 930 (6th Cir. 2025).

### A. Miles-El fails to establish Article III standing against Pancheri because he asserts no injury that is fairly traceable to, or redressable by, Pancheri.

Standing under Article III is an absolute requirement for all claims brought in federal court, including claims for money damages. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 418 (2021). As noted by the Supreme Court, quoting then-Judge Barrett, " 'Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not

a freewheeling power to hold defendants accountable for legal infractions.' " *Id*. at 427 (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019)).

Defendants concede that they did not raise this issue below. But, because standing is jurisdictional, it can be raised at any time, including on appeal. *Bittel v. Yamato Int'l Corp.*, 70 F.3d 1271 (6th Cir. 1995); *Libertarian Party of Ohio v. Wilhem*, 988 F.3d 274, 278 (6th Cir. 2021). This Court may also consider it sua sponte. *United States v. Health Possibilities, P.S.C.*, 207 F.3d 335, 342 n.5 (6th Cir. 2000). Accordingly, this Court may consider whether Miles-El has standing to raise an Eighth Amendment claim against Pancheri.

For standing to exist, a plaintiff must show each of the following elements: (1) a "concrete, particularized, and actual or imminent" injury; (2) that is "fairly traceable" to the defendant's alleged conduct; and (3) which the court could redress by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). As the plaintiff, Miles-El bears the burden of establishing standing, *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 983 (6th Cir. 2012), as to all his

claims.  *Universal Life Church Monastery Storehouse v. Nabors*, 35

F.4th 1021, 1031 (6th Cir. 2022).

Here, Miles-El lacks standing to raise an Eighth Amendment

claim against Pancheri because Pancheri lacked the authority to

transfer him.  Thus, Miles-El cannot show that his alleged injury is

traceable to, or redressable by, Pancheri.  *Doe v. Lee*, 102 F.4th 330,

335–36 (6th Cir. 2024) ("Plaintiffs must do more than allege that

Governor Lee may harm them, or that he theoretically possesses the

power to do so.")  Merely alleging that an official has the power to take

an action does not suffice.  *Id*.

This Court has rejected attempts to attribute powers to

governmental defendants that they simply do not have.  For instance, in

*Universal Life Church Monastery Storehouse*, a group of ministers

alleged that Tennessee's Attorney General could prosecute them, order

local district attorneys to prosecute them, or entice local clerks to deny

marriage licenses to those whose marriages were solemnized by them.

35 F.4th at 1032–33.  This Court rejected that argument because the

Attorney General lacked the authority to initiate prosecutions or order

local district attorneys to do so.  *Id*.  As for enticing local clerks, because

the Attorney General had expressly instructed local clerks "that they have no authority, much less a duty, to inspect officiants' credentials before issuing the licenses," the ministers could not show that their injuries were traceable to, or redressable by, the Attorney General. *Id.* at 1033.

Pancheri could not have injured Miles-El via the transfer process because he did not have the power to transfer Miles-El. *Kubala v. Smith*, 984 F.3d 1132, 1141 (6th Cir. 2021) (holding that a threat may only rise to an adverse action if made by an individual "with the power to carry them out."); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (holding that two prison employees "cannot be liable because they neither fired nor had the authority to fire Shehee from his job at the commissary.") And because Pancheri could not have caused Miles-El's alleged injuries, damages paid by him would not redress them.

### B.    The record shows that Pancheri lacked the authority to transfer Miles-El.

The evidence produced by Defendants established that Pancheri had no authority to transfer Miles-El and had no control over where MDOC transferred Miles-El.  At the time of Miles-El's allegations,

Pancheri was a prison counselor.  (R. 34-4, Page ID # 365, ¶ 4.)  As a prison counselor, he did not have the authority to transfer prisoners or determine where MDOC would transfer prisoners.  (*Id*. at Page ID # 365, ¶ 8.)  His role was restricted to preparing security classification screens, including one for Miles-El, nothing more.  (*Id*. at ¶ 7.)

Petersen, MDOC's Transfer Coordinator, corroborated Pancheri's account, stating that MDOC's Correctional Facilities Administration, located at MDOC's Lansing, Michigan offices, controls prisoner transfers, including Miles-El's transfer from URF to LMF.  (Petersen Dec., R. 34-7, Page ID # 376–77, ¶¶ 2, 4–10.)  MDOC—not Pancheri— selected Miles-El for transfer; Petersen—not Pancheri—prepared Miles-El's transfer order to LMF; and Petersen did so because it was necessary to accommodate bed space needs—not due to Miles-El's dog allergy or asthma.  (*Id*. at ¶¶ 10-12.)  In sum, Pancheri did not select Miles-El for transfer, had no authority to transfer him, and played a minimal role in the process, which consisted of completing a routine security form.  (*Id*. at ¶¶ 17–19.)

Miles-El offers nothing more than conclusory statements to counter this.  And his brief on appeal ignores that, in the district court,

he conceded that Pancheri had no authority to transfer him, admitting that Pancheri could transfer him only "if the Lansing Transfer Coordinator approves his screen and transfer request[.]" (R. 1, Page ID # 8, ¶ 38.) And, in opposing Defendants' motion for summary judgment, Miles-El also conceded that "Pancheri is not the [sic] who approves transfers." (R. 36, Page ID # 392, ¶ 26.) These admissions are sufficient in themselves to sink Miles-El's belated claim that Pancheri had authority to transfer him.

Despite his admissions below, Miles-El argues on appeal that Pancheri did have the authority to transfer him, referring to two bits of evidence in the record. First, Miles-El claims that he "showed that Officer Pancheri had authority both to 'initiate[]' transfers from Chippewa, and to prevent transfers from taking place." (Pl.'s Appeal Br., RE. 14, p. 53, citing R. 36, Page ID # 392–393.) Miles-El showed nothing of the sort and instead made conclusory allegations while offering nothing to substantiate them. (*Id*. at ¶¶ 26–27.) This Court need not accept unsubstantiated, conclusory allegations. *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020).

Second, Miles-El also claims that the Slough declaration proves that Pancheri had the authority to transfer him. (Pl.'s Appeal Br., RE. 14, p. 53, citing R. 36, Page ID # 388.) The Slough declaration, however, merely reiterates Miles-El's own conclusory allegations, claiming that Pancheri told Slough that he would "get [Miles-El] transferred to Alger Max" and "do a security screen and submit it to the transfer coordinator and get Miles-El gone." (R. 36, Page ID # 400, ¶ 8.) Later, Slough stated that Pancheri "told [the transfer coordinator] to transfer Miles-El to LMF." Interpreted in the light most favorable to Miles-El, these statements merely show that Pancheri wanted Miles-El transferred to Alger. They do not claim—let alone show—that Pancheri had the authority to effect that transfer. And they do not contest, or even address, Petersen's statement that she, not Pancheri, selected Miles-El for transfer to LMF.

Miles-El failed to show that Pancheri had the authority to transfer him. As such, any injury he claims to have suffered as a result of a transfer is not fairly traceable to Pancheri. Because there is no injury fairly traceable to Pancheri, Miles-El cannot establish standing, and

this Court should dismiss his appeal of the district court's dismissal of his Eighth Amendment claim.

### C. Miles-El has abandoned his First Amendment claim and all claims against the Individual Defendants other than Pancheri.

Miles-El's appellate brief makes no mention of his First Amendment claim and only contests the dismissal of one Individual Defendant, Pancheri. Accordingly, Miles-El's First Amendment claim against all Defendants, and all his claims against Director Washington, Heinritz, Potila, and Schroeder, have been abandoned. *Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003) ("They have not, however, presented any argument on this subject in their briefs. We therefore consider this issue as abandoned."); *Priddy v. Edelman*, 883 F.2d 438, 446 (6th Cir. 1989) ("We normally decline to consider issues not raised in the appellant's opening brief." (internal quotations citation omitted)) Indeed, Miles-El concedes that the "two other individual defendants . . . aren't at issue in this appeal." (Pl.'s Appeal Br., RE. 14, p. 54.) Accordingly, this Court must affirm the dismissal of the First Amendment claim and all claims against Director Washington, Heinritz, Potila, and Schroeder.

## II. Miles-El failed to show that Pancheri violated the Eighth Amendment and Pancheri is protected by qualified immunity because Miles-El did not show that he violated a right that was clearly established at the time of his alleged injury.

Miles-El alleges that Pancheri violated the Eighth Amendment through deliberate indifference to his asthma. (R. 1 at Page ID # 18, ¶¶ 129–130; Pl.'s Appeal Br., RE. 14, p. 52.) Miles-El specifically claims that Pancheri was deliberately indifferent because "Pancheri refused to transfer Mr. Miles-El away from the dogs."[4] (*Id.* at pp. 49–50.) This Court should affirm for three reasons. First, Miles-El failed to show that Pancheri was personally involved in the alleged violation or that Pancheri caused his alleged injury. Second, Miles-El failed to sustain his burden of producing sufficient evidence to create a genuine issue of material fact. Third, Miles-El cannot overcome Pancheri's qualified immunity.

---

[4] On appeal, Miles-El does not argue that Pancheri violated the Eighth Amendment relative to his dog allergy and has thus abandoned review of that issue. *Sommer*, 317 F.3d at 691; *Priddy*, 883 F.2d at 446.

### A. Miles-El fails to show that Pancheri was personally involved in the alleged Eighth Amendment violation.

Because Miles-El proceeds under § 1983, he must show that

Pancheri was personally involved in the alleged unconstitutional

activity. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); see also *Johnson v.*

*Moseley*, 790 F.3d 649, 656 (6th Cir. 2015). Miles-El fails to establish

Pancheri's personal involvement. He asserts, but does not show, that

Pancheri had the authority to transfer him. But "it's not enough to

simply state that the causation requirement is satisfied; that legal

conclusion must be supported by some factual basis showing a causal

link." *Caraway v. CoreCivic of Tennessee, LLC*, 98 F.4th 679, 686 (6th

Cir. 2024) (cleaned up).

Indeed, as discussed above, Pancheri lacked the authority to

transfer Miles-El. On this basis alone, Miles-El's Eighth Amendment

claims against him were properly dismissed for lack of personal

involvement and lack of causation. *Id.* See also *Starcher v. Corr. Med.*

*Sys., Inc.*, 7 F. App'x 459, 466 (6th Cir. 2001) (affirming grant of

summary judgment for failure to establish a causal connection between

the defendants' alleged conduct and the prisoner's death); *Olmstead v.*

*Fentress Cnty. Tenn.*, No. 19-5447, 2019 WL 8631807, at *2 (6th Cir.

Nov. 27, 2019) (affirming dismissal of prisoner's Eighth Amendment claim in part due to lack of causal link between the defendants' conduct and the claimed injury).

## B. Miles-El fails to satisfy the deliberate indifference test.

Miles-El also failed to sustain his burden of establishing that Pancheri was deliberately indifferent to a serious medical need. This test has both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The objective component of a medical deliberate indifference claim requires a plaintiff to show that prison officials did not adequately respond to a serious medical need of a prisoner that was "objectively harmful enough to establish a constitutional violation." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). Miles-El "must show 'that he is incarcerated under conditions posing a substantial risk of serious harm.'" *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) (quoting *Farmer*, 511 U.S. at 834). Only the most extreme and egregious circumstances violate the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Routine discomfort, including "restrictive and even harsh

[conditions] . . . are part of the penalty that criminal offenders pay for their offenses against society" and the Eighth Amendment only prohibits conduct involving the "unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346–47 (1981) (cleaned up).

The subjective prong requires Miles-El to show that Pancheri was (1) aware of facts from which an inference of a substantial risk of serious harm could be drawn, (2) that he actually drew that inference, and (3) consciously disregarded it. *Farmer*, 511 U.S. at 837–38. Negligence is insufficient, *Reedy v. West*, 988 F.3d 907, 914 (6th Cir. 2021), because Miles-El must show that Pancheri had a state of mind that rose above gross negligence, *Rhinehart*, 894 F.3d at 767, and was "equivalent to criminal recklessness," *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013). The subjective component can only be based on Pancheri's own personal knowledge. *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005).

### 1. Miles-El failed to establish that he had a serious medical condition.

Miles-El cannot establish the objective component of a medical deliberate indifference claim because he failed to show that he suffered a serious medical need. *Farmer*, 511 U.S. at 834. Miles-El provided

little other than his own assertions to establish that he had a serious medical condition. His own assertions, however, are not sufficient.

Generally, a serious medical condition is one that has either been diagnosed by a doctor or that is so obvious that even a layperson can recognize that the ailment needs medical attention. *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004)). But *Harrison* did not hold that asthma is a serious medical condition because the parties conceded that it was. *Harrison*, 539 F.3d at 518–19. Miles-El cannot establish that his asthma was either severe or a serious medical condition because he never produced a diagnosis by a doctor. Instead, he provided a 2017 chronic care visit that notes he experienced symptoms of asthma, and that "animals" was an aggravating factor. (MDOC BHCS Record, R. 1-1, Page ID # 21.) The record does not establish that his asthma, or its severity, was diagnosed by a doctor.

Nor did Miles-El provide expert testimony to establish that his asthma constituted a serious medical condition. The mere fact that he had asthma is insufficient because, assuming that it could be a serious medical condition, it varies in severity from person to person. Absent

expert testimony, his claim must fail. *Phillips v. Tangilag*, 14 F.4th 524, 538–39 (6th Cir. 2021).

There is an exception for obviously serious medical conditions. In *Blackmore*, 390 F.3d at 899, a pretrial detainee "exhibited obvious manifestations of pain and injury" consistent with a serious medical condition, namely appendicitis. Blackmore was eventually hospitalized, and doctors performed an appendectomy. *Id.* at 894. There was no question that appendicitis, which can be fatal absent surgical intervention, was a serious medical condition. Nor that the defendants in *Blackmore* observed his condition. But, here, Miles-El provided no evidence that Pancheri personally observed his asthma or that he observed any symptoms that would inform a lay person that the asthma was severe.

Although Miles-El's asthma appears to have caused him discomfort, it does not rise to this level of obvious seriousness. Unlike *Blackmore*, Miles-El was neither hospitalized nor required surgery. And, during the times relevant to the present suit, he never obtained the medical detail that would ensure that he would not be housed in a

facility with dogs. Miles-El's own inaction serves as an implicit admission that his asthma was not a serious medical condition.

### 2. Miles-El failed to establish that Pancheri knew of and disregarded a serious medical condition.

Nor can Miles-El establish the subjective element. The subjective element requires him to show that Pancheri was aware of facts from which an inference of a substantial risk of serious harm could be drawn, that he actually drew that inference, and then consciously disregard it. *Farmer*, 511 U.S. at 837–38. Pancheri is not a doctor or a nurse, and Miles-El provided no evidence to establish that he had the requisite knowledge, training, or experience to recognize the signs of asthma or judge its severity.

Miles-El notes that, although the district court dismissed the Eighth Amendment claims against Pancheri in part on the basis that he consulted with medical providers, only Potila and Schroeder consulted with medical providers. (Pl.'s Appeal Br., RE. 14, p. 21.) This is of no consequence, however, because the district court adopted the R&R "as the Opinion of the Court," (R. 48, Page ID # 504), and the R&R dismissed Miles-El's Eighth Amendment claim against Pancheri

because he "had no authority to transfer Miles[-El] or to assign him to LMF," (R. 45, Page ID # 460).

As discussed above, Pancheri did not have authority to transfer Miles-El. Even if this Court concludes that Pancheri's authority is an issue of fact, Miles-El did not show, via record evidence, that Pancheri was aware that he had asthma, that he drew the inference that it was a serious medical condition, and consciously disregarded that inference. *Farmer*, 511 U.S. at 83–38. Miles-El's attempts to do so are based on a misreading of the record.

Miles-El claims that Pancheri knew of his "severe asthma" based on the grievances he filed, Pancheri's personal observations, and his statements to Miles-El and Slough. (Pl.'s Appeal Br., RE. 14, pp. 52-53, citing to R. 1, Page ID # 8; R. 1-2, Page ID # 22; R. 1-3, Page ID # 23; R. 36, Page ID # 392.) None of these, however, show that Pancheri knew that Miles-El had asthma, let alone severe asthma.

The two grievances Miles-El cites make no mention of Pancheri. The first one was reviewed by "C. Thompson" and "R. Batho." (Step I Grievance Resp., R. 1-2, Page ID # 22.) The second one was reviewed by Richard Russell. (Step III Grievance Decision, R. 1-3, Page ID # 23.)

Nothing establishes that Pancheri knew of either of these grievances or the claims made in them.

Miles-El also relied on the allegations in his complaint, claiming that "Officer Pancheri told Mr. Miles-El that he 'did not care' that transferring Mr. Miles-El would cause him injury, and that Mr. Miles-El could 'complain and deal with' his asthma at his new facility." (Pl.'s Appeal Br., RE. 14, p. 53, citing R. 1, Page ID # 8, ¶ 38.) This is a gross distortion of the record. The full paragraph makes no mention of asthma:

> 38. Plaintiff asked Pancheri directly how he was going to send him to Alger Level II, with only one-(1) Level II Unit that is used for the "Leader Dog Program." Pancheri told Plaintiff he did not care and if Lansing Transfer Coordinator approves his screen and transfer request that's where Plaintiff will be going and plaintiff can complain and deal with it there because it would no longer be his problem.

(*Id.*) This paragraph neither alleges that Pancheri knew of Miles-El's asthma nor provides any proof that he knew of it. Miles-El's misrepresentation of the record cannot create a genuine issue of material fact.

In a similar vein, Miles-El contends that Pancheri "was aware of [his] asthma" based in part on Pancheri's personal observations of "[his]

symptoms in his housing unit at Chippewa." (Pl.'s Appeal Br., RE. 14, pp. 53.) Miles-El cites to his response in opposition to Defendants' motion for summary judgment. (R. 36, Page ID # 392.) But Miles-El does not allege that Pancheri observed his "severe asthma." Instead, he claims that "Pancheri knew that Miles-El had severe allergies to animals from his grievances and Miles-El being transferred to Pancheri's Unit on 11-1-18 from URF–West H-Unit." (*Id*.) The record does not support Miles-El's claims on appeal that Pancheri knew that he had "severe asthma."

Notably, Miles-El does not rely on the Slough declaration. Nor can he because it does not allege that Pancheri had any knowledge of Miles-El's asthma. Instead, it alleges that Pancheri wanted to transfer him because of the grievances Miles-El filed and his election as unit representative, neither of which is relevant to Miles-El's Eighth Amendment claim.

### C.  Miles-El cannot overcome Pancheri's qualified immunity.

Pancheri is entitled to qualified immunity unless Miles-El can establish both that Pancheri's conduct violated a constitutional right, and that the right at issue was clearly established at that time.

*Martinez v. Wayne Cnty., Mich.*, 142 F.4th 828, 836 (6th Cir. 2025).

Courts may analyze these two prongs in any order. *Pearson v.*

*Callahan*, 555 U.S. 223, 236 (2009). Miles-El cannot satisfy either

prong of the qualified immunity test. First, Miles-El does not show

deliberate indifference to a serious medical need. Second, he fails to

show that Pancheri violated an Eighth Amendment right that was

clearly established at the time of his alleged injury. Because Miles-El

failed to establish either prong, qualified immunity applies, and the

district court's dismissal should be affirmed. *Crawford v. Tilley*, 15

F.4th 752, 760 (6th Cir. 2021).

> **1.    Miles-El failed to establish the violation of an Eighth Amendment right.**

As discussed above, Miles-El failed to establish an Eighth

Amendment violation because he cannot show Pancheri's personal

involvement, did not establish causation, and cannot satisfy the

deliberate indifference test. Accordingly, his claim fails on the first

prong of the qualified immunity test and the district court's decision

should be affirmed.

### 2. Pancheri did not violate a clearly established Eighth Amendment right.

Even if this Court finds that Miles-El established an Eighth Amendment violation, he fails to show that Pancheri violated a clearly established Eighth Amendment right. "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand" that his conduct is unlawful. *Dist. of Columbia v. Wesby*, 583 U.S 48, 63 (2018) (cleaned up). Although it is not necessary to find "a case directly on point," at the same time, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The "right must be defined in a manner that puts a reasonable official on notice" that his actions violated the constitution. *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992).

In determining whether a right is clearly established, Miles-El "must point to a case showing that reasonable officers would have known their actions were unconstitutional under the specific circumstances they encountered." *Bell v. City of Southfield*, 37 F.4th 362, 367 (6th Cir. 2022). He "cannot point to unpublished decisions to meet this burden" nor can out-of-circuit case law constitute clearly

established precedent. *Id.* at 367–68. Indeed, this Court has a "general rule against using out-of-circuit caselaw in the 'clearly established' inquiry." *Burnett v. Griffith*, 33 F.4th 907, 913 (6th Cir. 2022). Furthermore, Miles-El must show that this right was clearly established as of the date of the alleged misconduct. *Barker v. Goodrich*, 649 F.3d 428, 433 (6th Cir. 2011). In this case, the alleged misconduct occurred no later than February 9, 2020, the date on which Miles-El transferred to LMF. (R. 1, Page ID # 8, ¶ 39.)

Miles-El contends that it is "rare" to apply qualified immunity in an Eighth Amendment case where there is a constitutional violation but no clearly established law, citing to *Finley v. Huss*, 102 F.4th 789, 810 (6th Cir. 2024). (Pl.'s Appeal Br., RE. 14, pp. 56–59.) This argument misunderstands the nature of qualified immunity, which contains two prongs, and requires a plaintiff to establish both of them. *Pearson*, 555 U.S. at 236; *al-Kidd*, 563 U.S. at 735. As this Court stated in *Crawford*, 15 F.4th at 760, "[w]e can address these requirements in either order. If one is lacking, we need not address the other." (internal citation omitted). Rare or not, Miles-El must establish *both* elements of

qualified immunity.  Because he cannot do so, the district court's

dismissal must be affirmed.

### 3. The right at issue was not clearly established at the time of the alleged injury.

Before analyzing whether Miles-El showed the violation of a right

was clearly established, this Court must define the specific right at

issue.  *Finley*, 102 F.4th at 808.  The right at issue cannot "be defined at

a high level of generality."  *White v. Pauly*, 580 U.S. 73, 79 (2017)

(internal quotations and citation omitted).  Instead, the contours of the

right must be sufficiently clear such that " 'every reasonable official

would have understood that what he is doing violates that right.' "

*Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5–6 (2021) (quoting *Mullenix v.*

*Luna,* 577 U.S. 7, 11 (2015)).  Accordingly, Miles-El must show that

Pancheri violated the Eighth Amendment under the specific

circumstances he faced.  *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014).

Here, Miles-El alleges that Pancheri violated the Eighth

Amendment by not transferring him to a facility without a dog program

and, later, by transferring him to a facility with a dog program, despite

Miles-El's asthma.  (Pl.'s Appeal Br., RE. 14, pp. 49–50.)  As such, the

right at issue is whether a correctional official violates the Eighth

Amendment by declining to transfer a prisoner with asthma to a facility without a dog program or by transferring that prisoner to a facility with a dog program. This is neither defined too narrowly nor too broadly.

No case law in this circuit has held that refusing to transfer a prisoner with asthma to a facility without a dog program or transferring that prisoner to a facility with a dog program violates the Eighth Amendment. For this reason, Pancheri is entitled to qualified immunity, even if Miles-El can establish that Pancheri violated the Eighth Amendment. *Crawford*, 15 F.4th at 760.

### 4. Miles-El relies on inapposite case law.

Miles-El relies on several cases to show the violation of a clearly established right, but none of them presents the situation faced by Pancheri. For instance, he relies on *Helling v. McKinney*, 509 U.S. 25 (1993), which held that exposure to environmental tobacco smoke can violate the Eighth Amendment. In *Helling*, the plaintiff alleged that his cellmate smoked five packs of cigarettes a day. 509 U.S. at 28. Miles-El claims that Pancheri should have transferred him to a prison without a dog program. The only discussion of a transfer in *Helling* was whether the plaintiff's transfer to a different facility, without the five-pack-a-day

cellmate, mooted his claim for injunctive relief. *Id*. at 35–36. *Helling*
does not apply.

Nor do *Hunt v. Reynolds*, 974 F.2d 734 (6th Cir. 1992) or *Talal v.
White*, 403 F.3d 423 (6th Cir. 2005) help Miles-El. For starters, neither
case discusses qualified immunity. They are also factually distinct.

In *Hunt*, this Court observed that "the denial of adequate medical
care can violate the Eighth Amendment." *Hunt*, 974 F.2d at 735. It
further observed "that the Eighth Amendment's objective component is
violated by forcing a prisoner with a serious medical need for a smoke-
free environment to share his cell with an inmate who smokes." *Id*. at
736.

*Talal*, like *Hunt*, concerned prison smoking policies. The plaintiff
was allergic to tobacco smoke and alleged that he was exposed to
excessive levels of smoke even in non-smoking housing units. 403 F.3d
at 425. The evidence established the objective element of the deliberate
indifference test. *Id*. at 427. As to the subjective element, the
defendants failed to make a good-faith effort to enforce the prison's non-
smoking policies, including allowing staff and prisoners to smoke in the

plaintiff's non-smoking area and refusing to transfer him to a cell with a non-smoking cellmate. *Id*. at 427–28.

Because this Court must analyze the actual circumstances Pancheri confronted, *Plumhoff*, 572 U.S. at 779, applying the cases cited by Miles-El would "define clearly established law at too high a level of generality." *City of Tahlequah, Okla. v. Bond*, 595 U.S. 9, 12 (2021). At most, *Helling*, *Hunt*, and *Talal* show that that prisoners have a clearly established right to live in a smoke-free environment if they can establish that exposure to environmental tobacco smoke exacerbates an underlying serious medical condition. Because clearly established law must be determined at a particularized level, *Anderson v. Creighton*, 483 U.S. 635, 640 (1987), these cases have no application to Miles-El's claim that Pancheri should have transferred him to a facility without a dog program because of his asthma.

Miles-El's reliance on *Darrah v. Krisher*, 865 F.3d 361, 364 (6th Cir. 2017), is misplaced because the *Darrah* defendants, unlike Pancheri, were medical personnel—doctors and a nurse—who provided treatment. It is uncontested that Pancheri is neither a doctor nor a nurse and does not provide medical treatment. Non-medical staff

cannot be held liable for medical treatment decisions. *Reed-Bey v. Pramstaller*, 607 F. App'x 445, 451 (6th Cir. 2015).

Nor does *Luna v. Davis*, 59 F.4th 713 (5th Cir. 2023) help Miles-El. First, as an out-of-circuit case, it is not binding and cannot clearly establish the law. *Bell*, 37 F.4th at 367–68; *Burnett*, 33 F.4th at 913. Second, it is easily distinguished. In *Luna*, the plaintiff established that "he had been harassed and threatened by other inmates at least twice before his transfer," including threats of death and sexual assault. *Luna*, 59 F.4th at 716–17. The defendant that transferred the plaintiff made a statement "suggest[ing] that she was aware of the earlier assault and the risk that a similar incident could take place upon Luna's transfer back." *Id.* at 717. She transferred him anyway and the plaintiff was violently assaulted. *Id. Luna*, which involved a transfer to a facility in which there was a known threat of violent assault and a defendant who made the transfer, has no application to the present case.

**III. Miles-El's ADA claim is barred by the Eleventh Amendment because he cannot establish a corresponding Eighth Amendment violation.**

Miles-El sues the State Defendants under Title II of the ADA for money damages.  (R. 1, Page ID # 12–16, 19; Pl.'s Appeal Br., RE. 14, p. 61.)  Under the Eleventh Amendment, however, States and their agencies are immune from suits for money damages.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994).  An exception to Eleventh Amendment immunity exists for prospective injunctive and declaratory relief against state officials under *Ex parte Young*, 209 U.S. 123 (1908), but that exception does not allow suits against the state itself.  *Stanley v. W. Michigan Univ.*, 105 F.4th 856, 864 (6th Cir. 2024).

Title II of the ADA operates as a limited waiver of the MDOC's sovereign immunity, but only insofar as it violates the Fourteenth Amendment.  *United States v. Georgia*, 546 U.S. 151, 158–59 (2006).  See also *Mingus v. Butler,* 591 F.3d 474, 482 (6th Cir. 2010); *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 569 (6th Cir. 2013).  Miles-El concedes this point on appeal.  (Pl.'s Appeal Br., RE. 14, pp. 60–63.)

Because the Eighth Amendment is enforceable against the States via the Fourteenth Amendment, Miles-El can only maintain an action against MDOC so long as it constitutes an actual violation of the Eighth Amendment. *Georgia*, 546 U.S. at 157–59.

As noted above, Miles-El does not have a viable Eighth Amendment claim. Thus, he has not abrogated the MDOC's immunity under the Eleventh Amendment. *Id.* at 159. Accordingly, because Miles-El does not have a valid underlying Eighth Amendment claim against Pancheri, the sole remaining Individual Defendant, this Court must affirm the dismissal of his ADA claims.[5]

Miles-El attempts to get around *Georgia* and its progeny via *Tennessee v. Lane*, 541 U.S. 509 (2004) and *City of Boerne v. Flores*, 521 U.S. 507 (1997). Miles-El, however, never raised this argument below, and he therefore forfeited it. *Bondex Int'l, Inc. v. Hartford Acc. & Indem. Co.*, 667 F.3d 669, 681 (6th Cir. 2011) ("[W]e do not consider this [argument] because Appellants forfeited the claim by failing to raise it in . . . the proceedings below.").

---

[5] Defendants concede that this does not apply to Miles-El's RA claims. See *Gean v. Hattaway*, 330 F.3d 758, 775 (6th Cir. 2003).

Moreover, although Miles-El demands that this Court "must" consider his claim, he fails to develop this argument, tacking a single paragraph to the end of the sovereign immunity section of his brief. (Pl.'s Appeal Br., RE. 14, pp. 62.) This Court, however, has no duty to make Miles-El's argument for him and he cannot "merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *Hayes v. Horton*, 596 F. Supp. 3d 978, 993 (E.D. Mich. 2022) (cleaned up).

To the extent that this Court considers Miles-El's contention, *Lane* does not waive MDOC's sovereign immunity. Instead, it recognizes that "Congress' § 5 [of the Fourteenth Amendment] power is not . . . unlimited." *Lane*, 541 U.S. at 520. And the Court's ruling narrowly restricted waiver of the States' sovereign immunity under Title II of the ADA "to the class of cases implicating the fundamental right of access to the courts," because that "constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment." *Id*. at 533–34.

No fundamental right is implicated here and Miles-El makes no argument to the contrary.  In addition, abrogating Michigan's sovereign immunity on a matter of internal prison policy would be particularly inappropriate considering the deference given to corrections officials in matters of internal prison operations, including transfers.  Indeed, the administration of prisons is of "acute interest to the States" and prison officials have discretion to transfer a prisoner "for whatever reason or for no reason at all." *Meachum v. Fano*, 427 U.S. 215, 228–29 (1976). See also *Montanye v. Haymes*, 427 U.S. 236, 243 (1976) (finding that prisoners have no constitutional "right to remain at any particular prison facility and no justifiable expectation that he would not be transferred[.]").

This Court has similarly held that "problems of prison administration are peculiarly for resolution by prison authorities, and their resolution should be accorded deference by the courts." *Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997), *supplemented*, 133 F.3d 382 (6th Cir. 1998).  This Court has also admonished against "second-guessing" the decisions of prison administrators.  *Griffin v. Berghuis*, 563 F. App'x 411, 419 (6th Cir. 2014).

Because the issues Miles-El raises are matters of internal prison administration, *Lane* does not apply, and his lack of a viable Eighth Amendment claim against the sole remaining Individual Defendant means that he cannot overcome the State Defendants' Eleventh Amendment immunity. Accordingly, this Court should affirm the district court's dismissal of Miles-El's ADA claims.

## IV. The district court's dismissal of Miles-El's ADA and RA claims should be affirmed because Miles-El failed to provide sufficient evidence to substantiate his claims.

Miles-El brought claims under both the ADA and RA against the State Defendants. Because the district court properly found that Miles-El raised no genuine issue of material fact on his ADA and RA claims, this Court should affirm. Courts often analyze ADA and RA claims together because both claims require proof of substantially similar elements. *S.S. v. E. Ky. Univ.,* 532 F.3d 445, 452–53 (6th Cir.2008) (analyzing ADA and RA claims together but recognizing that the RA is limited "to denials of benefits 'solely' by reason of disability").

Miles-El failed to establish that he had a disability because the only medical evidence he offered was a single medical record from January 2017, over three years prior to his requested accommodation in

September 2020, stating that he had asthma and that "animals" were an aggravating factor. (R. 36-3, Page ID # 403.) Despite being housed in a facility that included dogs, Miles-El did not request an accommodation until *44 months later*. (ADA Reasonable Accommodation Request, R. 1-15, Page ID # 39.) And that disability request was for his dog allergy. (*Id*.) But Health Services did "not have [Miles-El] down for animal allergies." (*Id*., Page ID # 40.)

On appeal, Miles-El changes his argument. He now claims that his disability is asthma. (Pl.'s Appeal Br., RE. 14, pp. 38–39.) But he never requested an accommodation for asthma, only for his dog allergy. (R. 1-15, Page ID # 39.) This bait-and-switch is reason enough to deny his appeal.

Moreover, Miles-El failed to establish discrimination because he failed to provide evidence that other similarly situated individuals were treated differently. Both his ADA and RA claims also fail on the reasonable accommodation theory because Miles-El failed to provide any documentation showing that he was denied benefits. The RA claim also fails because Miles-El failed to establish that the alleged denial of

benefits was solely based on his asthma because it was his lack of a medical detail that caused the requested accommodation to be denied.

## A. Defendants did not forfeit any arguments,

Miles-El claims that Defendants forfeited several ADA and RA arguments. (Pl.'s Appeal Br., RE. 14, pp. 36, 39–43.) His argument, however, is at odds with this Court's holdings that it may affirm a district court's decision for any reason supported by the record, regardless of whether the district court itself relied on those reasons. *Lawson v. Creely*, 137 F.4th 404, 411 (6th Cir. 2025); *Carbone v. Kaal*, 140 F.4th 805, 809 n.1 (6th Cir. 2025); *Phillips,* 854 F.3d at 326. Moreover, as stated by the Fifth Circuit, "the rules against considering an argument not properly presented are more generous for an appellee than for an appellant. *Texas Democratic Party v. Abbott*, 978 F.3d 168, 178 (5th Cir. 2020). This rule makes perfect sense because "[a]ppellees neither select the issues for the appeal nor file reply briefs, leaving them at a disadvantage in being able to present all favorable arguments on appeal." *Id*.

*Abbott* comports with this Circuit's caselaw. Although an appellant can waive or forfeit an argument by not raising it on appeal,

that is not true for appellees.  *Leary v. Daeschner*, 228 F.3d 729, 741 (6th Cir. 2000), *abrogated on other grounds*, *EOG Res., Inc. v. Lucky Land Mgmt., LLC*, 134 F.4th 868, 883 (6th Cir. 2025).  An appellee cannot forfeit an argument by failing to respond to the appellant's arguments.  *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 214 n.2 (6th Cir. 2011).

## B.    Miles-El failed to establish a prima facie case under the ADA and RA.

Miles-El asserts two theories of liability under the ADA and RA, failure to accommodate and intentional discrimination, but he failed to establish a qualifying disability.  Miles-El was denied the requested accommodation because he lacked a medical detail as required by MDOC Policy, not discrimination.  (R. 1-16, Page ID # 40.)  Essentially, Defendants wanted a doctor's note explaining how to accommodate the alleged disability, which Miles-El failed to provide.  Both theories also require that Miles-El establish that he was denied programs or services because of his claimed disability, which he also failed to do.

Ultimately Miles-El's claims under the ADA and the RA are Eighth Amendment deliberate indifference claims because his claim is focused on the lack of medical detail and treatment from healthcare, not

anything within the discretion of Defendants.  However, allegations of

inadequate medical care do not raise a discrimination claim under the

ADA or the RA.  *Cannon v. Eleby*, 187 F.3d 634 (6th Cir. 1999); *Butler v.

Scholten,* No. 1:19-cv-449, 2019 WL 4126470, *7 (W.D. Mich. Aug. 30,

2019) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)).

Here, Miles-El makes no showing of discrimination based on his

asthma.  As such, his claim is that the Individual Defendants failed to

treat his purported medical need to be separated from the dog program.

Because this is not actionable under either statute, the district court

properly dismissed.

### 1.  Miles-El failed to establish a qualifying disability.

Miles-El never retained a medical expert to establish a qualifying

disability.  (Miles-El Dep., R. 34-3, Page ID # 361.)  And he never

submitted any medical evidence showing that he experienced medical

issues in 2020 or 2021.  When Miles-El complained of his dog allergy,

Schroeder specifically inquired with healthcare whether Miles-El

needed a transfer; she was told that he did not.  (Schroeder Dec., R. 34-

6, Page ID # 373.)  Requiring a medical detail, which is determined by

healthcare, is the same as asking for a doctor's note or explanation,

which is permitted.  *Lee v. City of Columbus, Ohio*, 636 F.3d 245, 255–56 (6th Cir. 2011).  And non-medical personnel may rely on the assessments of medical professionals.  *Spears v. Ruth*, 589 F.3d 249, 255 (6th Cir. 2009); *Winkler v. Madison Cty.*, 893 F.3d 877, 895 (6th Cir. 2018).

Although Miles-El made several complaints about his conditions in addition to his dog allergy, including "heat exhaustion" and lack of ventilation in July 2020, R. 1-12, Page ID # 36, his only claim on appeal is his asthma, (Pl.'s Appeal Br., RE. 14, pp. 38–39).  Accordingly, he cannot rely on those conditions to support his ADA and RA claims.

To prevail on a claim under the ADA or RA, a plaintiff must first establish that he has a qualifying disability.  *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 811 (6th Cir. 2020); *Hedrick v. W. Rsrv. Care Sys.*, 355 F.3d 444, 452–53 (6th Cir. 2004).  Miles-El claims that he suffers from "a physical or mental impairment that substantially limits one or more major life activities[.]"  42 U.S.C. § 12102(1)(A).  Medical documentation is required to support a finding that a disability is qualifying under the ADA.  *Lee*, 636 F.3d at 255–56.  Miles-El, however, failed to provide medical evidence to support this claim.  His one item of

medical evidence merely stated that he had asthma, and that "animals" were an aggravating factor.  (R. 36-3, Page ID # 403.)  Neither that, nor any other record, states that Miles-El must be housed separately from dogs.  His failure to provide such evidence requires affirming the district court because Miles-El failed to prove he had a qualifying disability.

### 2. Miles-El failed to establish he was qualified for the requested services.

Miles-El had the burden to show that he was qualified for the requested services.  *Kleiber v. Honda of Am. Mfg.,* Inc., 485 F.3d 862, 870 (6th Cir. 2007) (citing *Hedrick*, 355 F.3d at 457).  Miles-El failed to put forth any contemporaneous medical evidence to establish he was qualified for any of the services or that his access to the services was restricted.  Miles-El's sole support was self-serving allegations that he could not access medical care, use the housing unit dayrooms, and he went so far as to say that he could not even exercise outdoors.  (Pl.'s Appeal Br., RE. 14, p. 30.)  But he failed to provide medical evidence showing that he had experienced such problems resulting from his asthma.  His failure to submit that evidence warrants affirming the district court's granting of summary judgment.

### 3. Miles-El failed to establish that he was denied any services as a result of the alleged disability.

Miles-El makes unsupported claims that he could not attend religious services, access medical care, use the kiosks in the housing units or even exercise outdoors. (Pl.'s Appeal Br., RE. 14, p. 30.) Despite these claims, he submitted no evidence other than self-serving allegations. Miles-El's only medical support was a January 2017 medical record. And that merely showed that he had asthma, not that he experienced issues in September 2020 when he requested the accommodation. (R. 36-3, Page ID # 403.) Because Miles-El failed to sustain his burden of showing an issue of material fact, the district court's dismissal should be affirmed.

### 4. Miles-El cannot establish an intentional discrimination claim under the ADA.

Courts analyze claims of intentional discrimination brought pursuant to the ADA under the burden-shifting analysis established by *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802 (1973). Miles-El had the burden to establish a prima facie case of discrimination under the ADA. If a plaintiff establishes a prima facie case of discrimination, the defendant "must then offer a legitimate,

nondiscriminatory reason for its" challenged action. *Sjostrand v. Ohio State Univ.*, 750 F.3d 596, 599 (6th Cir. 2014). This "burden is merely one of production, not persuasion," and shifts the burden back to the plaintiff to show that the "explanation is a pretext for unlawful discrimination." *Id.*

To establish a prima facie claim for intentional discrimination under the ADA, Miles-El must show that he: (1) is an otherwise qualified individual with a disability; (2) was excluded from participation in a public entity's services, programs, or activities; and (3) such exclusion was due to the disability. *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015). A plaintiff must present evidence showing intentional discrimination because of his disability. *Id.* at 356–57.

Miles-El was required to prove that the alleged discrimination was "because of" a disability, *Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 325 (6th Cir. 2023), "present[ing] evidence that animus against the protected group was a significant factor in the discriminatory conduct." *Turner v. City of Englewood*, 195 F. App'x 346, 353 (6th Cir. 2006) (cleaned up). This required Miles-El to provide "enough evidence

of discrimination to persuade a reasonable jury that animus was a but-for cause of the challenged act," *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 683 (6th Cir. 2016), using "direct or indirect evidence of discrimination," *Bennett*, 86 F.4th at 325.

Miles-El provided no such evidence. First, he showed no evidence of discriminatory animus based on his disability. Second, his alleged disability was not the basis for the denial of his accommodation request; it was denied due to his lack of a medical detail. (R. 1-16, Page ID # 40.) For that matter, he never sought an accommodation for the disability he asserts on appeal—asthma (Pl.'s Appeal Br., RE. 14, pp. 38–39)—and instead sought an accommodation for his dog allergy, (R. 1-15, Page ID # 39).

To prove discrimination under the ADA or RA, Miles-El must demonstrate that he was treated differently than a similarly situated, non-disabled individual. *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1019 (6th Cir. 1997) (en banc) ("The ADA simply does not mandate equality between individuals with different disabilities. Rather, the ADA, like the Rehabilitation Act, prohibits discrimination between the disabled and the non-disabled."). Miles-El never provided any evidence

that other similarly situated individuals were transferred to facilities without dogs. Miles-El complains that transfers still happened for diabetics or those attending college programs. (R. 1, Page ID # 10.) But these individuals, who do not have asthma, are not similarly situated because they lack "any 'differentiating or mitigating circumstances' that would merit different treatment." *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 398 (6th Cir. 2017) (citing *Smith v. Leggett Wire Co.*, 220 F.3d 752, 762 (6th Cir. 2000)). Miles-El wanted a transfer but lacked a medical detail, which was required by policy, but he failed to show that another prisoner with asthma was transferred away from dogs without a medical detail.

Moreover, Defendants are permitted to request doctor's notes about an alleged disability under the ADA and RA. *Lee*, 636 F.3d at 255–56. Defendants did just that and Miles-El failed to provide one. Miles-El's lack of medical detail was the reason his requested accommodation was denied, not discrimination. (R. 1-16, Page ID # 40.)

> **5. Miles-El failed to establish that he was denied a reasonable accommodation.**

Miles-El was required to establish a prime face case for the alleged failure to offer reasonable accommodations. *Tucker v.*

61

*Tennessee*, 539 F.3d 526, 532–33 (6th Cir. 2008), *abrogated on other grounds by Anderson*, 798 F.3d at 357 n.1.  Only then must the defendant show that the provided accommodation was either effective or was not provided because it would have fundamentally altered the procedures or constituted an undue financial or administrative burden. *Id.*

Miles-El's requested accommodation was to be transferred to a facility without a dog program.  (Pl.'s Appeal Br., RE. 14, p. 42.)  However, the requested accommodation could not have been provided by Potila because such a transfer required a medical detail, which Potila could not provide.  (Potila Dec., R. 34-5, Page ID # 369.)  As discussed above, Pancheri could not provide the requested accommodation.  And Schroeder specifically sought healthcare's guidance on the issue and was informed that Miles-El's conditions did not warrant removal from his housing unit.  (Schroeder Dec., R. 34-6, Page ID # 373.)  The requested accommodation was not reasonable because Miles-El did not have a medical detail as required by policy and healthcare supported the denial.  (*Id.*; R. 1-16, Page ID # 40.)  That is

the reason it was denied, not because of discrimination based on a disability. (R. 1-16, Page ID # 40.)

Miles-El is in prison where healthcare and medical providers are on-site. Miles-El was housed with dogs for years but never had a medical detail that would have supported his requested accommodation. Nor did he submit any medical records, other than the January 2017 medical record, which is not pertinent to whether he was having issues in 2020, and did not bar him from being housed with dogs. And non-medical staff are not required to provide an independent medical evaluation of requested accommodations, which would be the practical result of a ruling in Miles-El's favor.

The State Defendants need only provide an accommodation where it is both reasonable and necessary. *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 813 (6th Cir. 2020). Miles-El never established that his accommodation request was necessary because he did not have either a medical detail or medical evidence establishing that his asthma required him to be housed in a facility without dogs. It is unreasonable to request a transfer without establishing that he has a physical condition necessitating it because "[a]ccommodations must be 'necessary'

considering [the plaintiff's] 'physical limitations.' " *Id.* (quoting *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 557 (6th Cir. 2008)). Miles-El's opinion that he should get what he requested runs counter to the fact that healthcare was consulted and stated that it was not warranted. Because Miles-El failed to provide medical evidence to establish that his condition in 2020 and 2021 warranted the requested accommodation, the district court should be affirmed.

### C. Miles-El cannot establish his RA claim because he cannot prove that the alleged discrimination was based solely on his alleged disability.

Miles-El is required to establish that the alleged discrimination was solely based on his disability. *See, e.g., Verkade v. U.S. Postal Service,* 378 F. App'x 567, 578 (6th Cir. 2010). ("An employer makes an adverse employment decision 'solely' because of its employee's disability when the employer has no reason left to rely on to justify its decision *other* than the employee's disability.") (cleaned up); *Turner v. City of Englewood,* 195 F. App'x 346, 354 (6th Cir. 2006) ("Plaintiff cannot make out a prima facie case of discrimination under the Rehabilitation Act because she cannot prove that discrimination was the *sole*

*motivation* for Defendant's rezoning of her property.") *Lee*, 636 F.3d at 255.

Defendants may request medical verification of an alleged disability under the RA. *Id.* at 255–56. Here, Defendants needed a medical detail pursuant to policy and Miles-El failed to provide one at any time relevant to this litigation, which resulted in the denial of the accommodation. While the lack of medical detail would be sufficient to provide a proper basis for denial of the accommodation, Schroeder also consulted, and relied on, medical staff. (Schroeder Dec., R. 34-6, Page ID # 373.) Because the denial of the accommodation could not have been based solely on the alleged disability, Miles-El's RA claim was properly dismissed, and the district court's ruling should be affirmed.

## V. The district court correctly refused to exercise supplemental jurisdiction over Miles-El's state law claims and there is no reason to revisit the issue should this case be remanded.

Consistent with 28 U.S.C. § 1367(c)(3), the district court, having dismissed Miles-El's federal claims, correctly declined to exercise supplemental jurisdiction over his state-law claims. (R. 48, Page ID # 503.) Once federal claims have been dismissed, state-law claims must

also be dismissed because "the leftover state claims are supplemental to nothing[.]" *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 34 (2025).

Miles-El does not contest that declining to exercise supplemental jurisdiction was proper where the district court dismissed all his federal claims. Rather, he argues that, should this court reverse and remand his federal claims, it should also reconsider supplemental jurisdiction on remand. (Pl.'s Appeal Br., RE. 14, pp. 64–65.) Even were this Court to reverse and remand, additional factors support the district court's decision to not exercise supplemental jurisdiction over his state-law claims.

This Court can affirm the district court for any reason supported by the record. *Lawson*, 137 F.4th at 411. Three such reasons exist here. First, claims for money damages brought pursuant to the Michigan Constitution are not viable when other avenues of recovery exist. *Swartz Ambulance Serv. v. Genesee County*, 666 F. Supp. 2d 721, 726 (E.D. Mich. 2009). Other avenues of recovery exist because Miles-El has asserted federal claims under § 1983, the ADA, and the RA. *Id.*

Second, Miles-El's state-law claim raises novel and complex issues of first impression that should first be addressed by the Michigan courts. Under 28 U.S.C. § 1367(c)(1), this Court can decline to exercise jurisdiction over a state-law claim if it "raises a novel or complex issued of State law." Miles-El claims that Pancheri violated Art I, §§ 3 and 16 of the Michigan Constitution and the PWDCRA by not transferring him to a facility that did not house dogs.[6] (R. 1, Page ID # 13–18.) Miles-El, however, does not cite, and Defendants have not found, any Michigan case law addressing this exact issue. Thus, Miles-El raises an issue of first impression that should be decided by Michigan courts. *Kowall v. Benson*, 18 F.4th 542, 549 (6th Cir. 2021).

Third, Miles-El has no viable claims against the State Defendants because they have sovereign immunity under both the Eleventh Amendment and Michigan law. As discussed above, Miles-El cannot sue the State Defendants in federal court. See, e.g., *Pennhurst State Sch. & Hosp.*, 465 U.S. at 100.

---

[6] Miles-El did not appeal the dismissal of Director Washington, Heinritz, Potila or Schroeder, thus abandoning review of their dismissal. *Sommer*, 317 F.3d at 691; *Priddy*, 883 F.2d at 446. Regardless, the same arguments apply to them as well.

## CONCLUSION AND RELIEF REQUESTED

For the reasons stated above, this Court should affirm the district court's grant of summary judgment.

Respectfully submitted,

*//s/Joshua S. Smith*
Adam P. Sadowski
Assistant Attorneys General
Counsel of Record
Attorneys for Defendants-Appellees
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
Smithj191@michigan.gov

Dated: December 30, 2025

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1.     This brief complies with the type-volume limitation of

Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding

the part of the document exempted by Federal Rule of Appellate

Procedure 32(f), this brief contains no more than 13,000 words.  This

document contains 12,948 words.

2.     This document complies with the typeface requirements of

Federal Rule of Appellate Procedure 32(a)(5) and the type-style

requirements of Federal Rule of Appellate Procedure 32(a)(6) because

this document has been prepared in a proportionally spaced typeface

using Word 2013 in 14-point Century Schoolbook.


*/s/ Joshua S. Smith*
Assistant Attorney General
Counsel of Record
Attorney for Defendants-Appellees
Corrections Division
P.O. Box 30217
Lansing, MI  48909
(517) 335-3055
Smithj191@michigan.gov

**CERTIFICATE OF SERVICE**

I certify that on December 30, 2025, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

*/s/Joshua S. Smith*
Assistant Attorney General
Counsel of Record
Attorney for Defendants-Appellees
Corrections Division
P.O. Box 30217
Lansing, MI  48909
(517) 335-3055
Smithj191@michigan.gov

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Defendants-Appellants, per Sixth Circuit Rule 28(a), 28(a)(1)-(2),

30(b), hereby designated the following portions of the record on appeal:

| Description of Entry | Date | Record Entry No. | Page ID No. Range |
|---|---|---|---|
| MDOC BHCS Record | 02/23/2023 | R. 1-1 | 21 |
| MDOC Memorandum | 02/23/2023 | R. 1-16 | 40 |
| Defendants' Motion for Summary Judgment ("Def. MSJ") | 08/01/2024 | R. 34 | 319–339 |
| Offender Tracking and Information System, Kushawn S. Miles ("Pl. OTIS") | 08/01/2024 | R. 34-2 | 342–344 |
| Declaration of Dean Potila ("Potila Dec.") | 08/01/2024 | R. 34-5 | 368–370 |
| Declaration of Sarah Schroeder ("Schroeder Dec.") | 08/01/2024 | R. 34-6 | 372–374 |
| Grievance | 08/01/2024 | R. 34-8 | 381–384 |
| Declaration of Loren Slough ("Slough Dec.") | 08/20/2024 | R. 36-1 | 400 |
| MDOC BHCS Record | 08/20/2024 | R. 36-3 | 403 |
| Defendants' Reply in Support of Motion for Summary Judgment ("Def. Reply Supp. MSJ") | 09/03/2024 | R. 40 | 412–423 |