RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0280p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

KUSHAWN S. MILES-EL,
*Plaintiff-Appellant*,

*v*.

STATE OF MICHIGAN; MICHIGAN DEPARTMENT OF CORRECTIONS; BUREAU OF HEALTH CARE SERVICES; ADAM PANCHERI; SARAH SCHROEDER; DEAN POTILA,
*Defendants-Appellees*.

No. 25-1140

Appeal from the United States District Court for the Western District of Michigan at Marquette.
No. 2:23-cv-00031—Jane M. Beckering, District Judge.

Argued: July 29, 2026

Decided and Filed: October 9, 2026

Before: McKEAGUE, SUTTON, and BUSH, Circuit Judges.

## COUNSEL

**ARGUED:** Steven D. Marcus, SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP, Washington, D.C., for Appellant. Christopher Alex, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees. **ON BRIEF:** Steven D. Marcus, Shay Dvoretzky, Parker Rider-Longmaid, SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP, Washington, D.C., Samuel Weiss, RIGHTS BEHIND BARS, Washington, D.C., for Appellant. Joshua S. Smith, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees.

---

**OPINION**

---

JOHN K. BUSH, Circuit Judge. Kushawn Miles-El is a former Michigan Department of Corrections (MDOC) prisoner with asthma and an alleged allergy to dogs. While incarcerated, he sued over his exposure to dogs at MDOC facilities. He claimed that Prison Counselor Adam Pancheri's failure to isolate him from dog dander violated the Eighth Amendment's prohibition of "cruel and unusual punishments inflicted," as applied to the States by the Fourteenth Amendment. Miles-El also claimed that MDOC and other state entities (State Defendants) violated Section 504 of the Rehabilitation Act (RA), Title II of the Americans with Disabilities Act (ADA), the Michigan Constitution, and the Michigan Persons with Disabilities Civil Rights Act. Pancheri and State Defendants moved for summary judgment, and the district court granted that motion. For the following reasons, we **AFFIRM.**

**I.**

Miles-El was incarcerated in MDOC prisons for more than 30 years. In 2017, MDOC transferred him to Muskegon, a facility that housed dogs for training purposes. According to Miles-El, he began experiencing "severe allergic reactions" when he would come into close contact with dogs. R. 1, Compl., PageID 9. He alleges that he suffered watery eyes, skin rashes, asthma attacks, chest congestion, difficulty breathing, and respiratory and sinus infections. He alerted MDOC officials to his symptoms, and his medical provider completed a report (chronic-care report) noting that he had "severe persistent" asthma that was aggravated by "animals, change in weather, exercise and pollen." R. 1-1, Chronic Care Report, PageID 21. This report also noted that inhalers relieved his symptoms, and the provider prescribed several respiratory treatments, including steroids, inhalers, a nebulizer, and a nasal spray.

MDOC later transferred Miles-El to Chippewa, another facility that housed dogs. Miles-El claimed that exposure to dogs caused asthma attacks and allergic reactions. He then invoked MDOC's three-step grievance process, under which a prisoner files a grievance at Step I, may appeal a denial at Step II, and may appeal once more at Step III.

At Step I, Miles-El complained that he was exposed to "animal[s], dust, lint, particles, dander, wool, ragweed, pollen" and "other" things to which he had "severe" allergies. R. 1-2, Step I Grievance Response, PageID 22. A Chippewa counselor contacted a medical provider, who confirmed that Miles-El had asthma but explained that his alleged dog dander allergy "ha[d] not been confirmed" because no documentation supported it beyond a "generalized description." *Id.* The provider also explained that animal dander would always aggravate[1] asthma. The counselor decided to move Miles-El to the East side of Chippewa, where dogs were not allowed.

Miles-El appealed at Step II. He complained that the move had not resolved the problem because he still had to visit the West side, where dogs were permitted, for programming. He also complained that the East side was more restrictive. The Chippewa Warden denied the appeal, concluding that the Step I response was satisfactory and noting that Miles-El's medical documents did not mention a dog dander allergy.

Miles-El appealed again at Step III, reasserting his earlier complaints and this time requesting transfer "to a facility without dogs." R. 1-3, Step III Grievance, PageID 24. The Office of Legal Affairs denied the appeal, concluding that Miles-El's concerns had been considered and investigated and that the Step II decision was proper.

After Miles-El was elected "Unit Block Representative" at Chippewa, R. 1, Compl., PageID 8 ¶ 37, he alleges that Officer Adam Pancheri, a prison counselor, responded angrily. Miles-El claims that Pancheri threatened to transfer him to Alger, another MDOC facility, so that "someone else [could] deal with him and his grievances and complaints." *Id.*

Miles-El was transferred to Alger in 2020. He claims that Pancheri transferred him to Alger, where he was "guaranteed" to be around dogs. Appellant Br. at 11. However, Chippewa's Transfer Coordinator, Debra Petersen, declared that Pancheri did not select Miles-El for a transfer, lacked the authority to do so, and was responsible only for "prepar[ing] a security classification screen." R. 34-7, Petersen Decl., PageID 378. According to Petersen, the Correctional Facilities Administration oversees the transfer of all prisoners between MDOC

[1]The report indicates that dogs were a "mitigating" factor, but in context, the provider clearly meant to say "aggravating."

facilities and Miles-El was transferred to accommodate bedspace needs. *Id.* at 377. Pancheri likewise claimed that he lacked authority to transfer Miles-El or determine where MDOC would transfer a prisoner.

At Alger, Miles-El filed an ADA accommodation request seeking placement away from housing units with dogs. Deputy Warden Dean Potila denied the request, explaining that, under MDOC policy, Miles-El had to raise his medical concerns with Health Services, which had no record that he had a dog allergy. Potila further explained that he would submit a transfer request if Miles-El obtained a medical detail from a healthcare provider establishing his medical need to be housed away from dogs.

Miles-El makes no allegation that, while at Chippewa or Alger, he ever obtained the medical detail Potila required. Instead, proceeding pro se, Miles-El sued Pancheri, State Defendants, and other prison officials, asserting claims under the Eighth Amendment, the ADA, the RA, and state law. The primary claims on appeal are his Eighth Amendment claim against Pancheri and ADA and RA claims against State Defendants. The district court granted summary judgment to the relevant defendants on those claims. As to the Eighth Amendment claim, the court concluded that Pancheri was not deliberately indifferent because prison officials consulted medical staff, who indicated that Miles-El did not need a medical transfer. R. 48, Second MSJ Op., PageID 502. As to the ADA and RA claims, the court concluded that inadequate medical treatment is not actionable under either statute and that Miles-El failed to show that he was denied the benefits of prison services or programs. The court also declined to exercise supplemental jurisdiction over Miles-El's state-law claims.

Miles-El timely appealed.

## II.

We review de novo a district court's grant of summary judgment. *Finley v. Huss*, 102 F.4th 789, 804 (6th Cir. 2024). Summary judgment is appropriate when there are no disputes of material fact and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, we view the facts in the light most favorable to Miles-El, as the nonmovant, and we "draw all reasonable inferences" in his favor.

*Lawson v. Creely*, 137 F.4th 404, 411 (6th Cir. 2025) (citation omitted). Also, "we may affirm on any grounds supported by the record, even if they are different from the grounds the district court relied upon in reaching its summary judgment decision below." *Gammons v. Adroit Med. Sys., Inc.*, 91 F.4th 820, 825 (6th Cir. 2024).

**III.**

Miles-El advances several arguments on appeal. He first challenges the grant of summary judgment to Pancheri on his Eighth Amendment claim. He next challenges the grant of summary judgment to State Defendants on his ADA and RA claims. He also argues that the Eleventh Amendment does not bar his ADA and RA claims and that the district court abused its discretion by declining to exercise supplemental jurisdiction over his state-law claims.

**A. Eighth Amendment Claim**

Miles-El contends that Pancheri was deliberately indifferent to his serious medical needs by failing to transfer him to a prison without a dog program. He argues that a genuine dispute over Pancheri's transfer authority precludes summary judgment. But that alleged factual issue is not material if summary judgment may be affirmed on a legal ground independent of the factual issue's resolution. *Linden v. Piotrowski*, 619 F. App'x 495, 501 (6th Cir. 2015). Here, Pancheri's assertion of qualified immunity is such an independent legal ground. The district court did not rule on qualified immunity, but Pancheri raised this protection below and reasserts it on appeal.

To overcome qualified immunity, Miles-El must show that Pancheri "violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). A right is clearly established if "every reasonable official would have understood that what he is doing violates that right." *Id.* (cleaned up). The right asserted here by Miles-El is that an officer violates the Eighth Amendment "by declining to transfer a prisoner with asthma to a facility without a dog program or by transferring that prisoner to a facility with a dog program." Appellee Br. at 42–43; *see* Appellant Br. at 59.

Miles-El first relies on *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and *Estelle v. Gamble*, 429 U.S. 97, 101–06 (1976), which state general Eighth Amendment principles. But cases stating only general principles are not enough to deprive an officer of qualified immunity. *See, e.g.*, *Richardson v. Falk*, 184 F.4th 833, 840 (6th Cir. 2026). A case must specifically address the issue presented to be considered clearly established law on that issue. *White v. Pauly*, 580 U.S. 73, 79 (2017).

The closest cases Miles-El cites for clearly established law are two decisions involving prisoners exposed to tobacco smoke. *See Hunt v. Reynolds*, 974 F.2d 734 (6th Cir. 1992); *see also Helling v. McKinney*, 509 U.S. 25 (1993). But those cases concern situations afield from the facts here. *Hunt* held that forcing a prisoner to share his cell with an inmate who smokes violates the Eighth Amendment's objective component when the prisoner has a "serious medical need for a smoke-free environment." 974 F.2d at 736. That is because the Eighth Amendment may protect against confinement conditions that pose a "serious health threat" but not those that cause "mere discomfort or inconvenience." *Id.* at 735 (citation omitted). *Helling* then clarified that a risk of *future* harm from tobacco smoke can constitute a serious health threat. 509 U.S. at 32–35.

Neither case clearly established that the Eighth Amendment required Pancheri to transfer Miles-El to a prison without a dog program. In *Hunt*, despite the prisoners' pulmonary and heart disease, we remanded to determine whether tobacco-smoke exposure posed a sufficiently serious threat to their health. 974 F.2d at 735–36. Here, Miles-El's chronic-care report did not specifically address any dog dander allergy. It documented only his asthma generally and identified "animals" as one of several aggravating factors, along with "change in weather, exercise and pollen." R. 1-1, Chronic Care Report, PageID 21. Such a broad description of Mile-El's asthma, encompassing a list of things that everyone encounters in life, gives us pause before concluding that the report could have given prison officials sufficient notice that Miles-El's exposure to dogs in particular would constitute an infliction of "cruel and unusual punishment[]." U.S. Const. amend. VIII. Even focusing only on the mention of "animals," the report did not indicate how severely animal exposure affected him or what kinds of animals or degree of exposure triggered his symptoms. And notably, the report also indicated that inhalers

relieved his symptoms. That was the very remedy that prison officials provided. Also, after Miles-El complained about exposure to dogs, a counselor contacted a healthcare provider, who said that Miles-El had no confirmed dog allergy, explained that animal dander always aggravates asthma, but did not advise complete separation from dogs as the only available treatment for Mile-El's condition. R. 1-2, Step I Grievance at URF, PageID 22. These circumstances contrast with those in *Hunt*, where there was confirmed linkage between the prisoners' disease and tobacco-smoke exposure and eliminating that exposure was the only available means of addressing their health problems. *See* 974 F.2d at 735–36. Therefore, *Hunt* did not clearly establish that housing Miles-El at a prison with a dog program posed a sufficiently serious health threat to require his transfer. Nor did *Helling*, which established only that sufficiently serious risks of tobacco-smoke exposure to future health can implicate the Eighth Amendment. 509 U.S. at 32–35.

Therefore, Pancheri is entitled to qualified immunity on Miles-El's Eighth Amendment claim.

**B. ADA and RA Claims**

Title II of the ADA and Section 504 of the RA both "prohibit public or federally funded entities, including prisons, from discriminating against disabled individuals while operating services or programs." *Finley*, 102 F.4th at 819–20. We typically "evaluate ADA and RA claims together." *Id.* at 820. To succeed on his ADA and RA claims, Miles-El must show that "(1) he has a qualifying disability, (2) he is otherwise qualified for a program, and (3) he was excluded from participation in, denied the benefits of, or subjected to discrimination under a program because of his disability." *Id.* He may establish the third element through proof either of a failure to accommodate or of intentional discrimination, and to succeed on his RA claim, Miles-El must also show that MDOC officials discriminated against him "solely" because of his disability. *Id.* We address the contested elements of these claims below.

**1. Failure to Accommodate**

To prevail under a failure-to-accommodate theory, Miles-El must show that a transfer to a dog-free facility was "necessary to avoid discrimination on the basis of [his] disability." *Id.* at 821 (citation omitted).

We examine Title I principles to determine whether Miles-El showed that his transfer was necessary. We have often considered Title I principles that cover employment and Title III principles that cover places of public accommodation when resolving failure-to-accommodate claims under Title II. *See Marble v. Tennessee*, 767 F. App'x 647, 650–52 (6th Cir. 2019); *Johnson v. Dobbins*, No. 22-5310, 2022 WL 16824202, at *3 (6th Cir. Nov. 8, 2022); *Peroli v. Huber*, No. 21-3202, 2021 WL 5411215, at *11 (6th Cir. Nov. 19, 2021). In *Marble*, for instance, we applied the Title I principle that a plaintiff bears the initial burden to request an accommodation because a covered entity should not have to speculate about the plaintiff's limitations or need for accommodation. 767 F. App'x at 652 (citing *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046–47 (6th Cir. 1998)).

Under Title I, an employer may require medical documentation showing that an employee's disability requires the requested accommodation. *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 812–14 (6th Cir. 2020); *Kennedy v. Superior Printing Co.*, 215 F.3d 650, 656 (6th Cir. 2000). In *Tchankpa*, an employee with a shoulder injury requested to work from home three days per week. 951 F.3d at 809–10. His medical documentation confirmed the injury but did not explain why it required him to work from home. *Id.* at 813–14. The employer requested medical documentation establishing that connection, and when Tchankpa failed to provide it, we held that the employer had no duty to grant the requested accommodation. *Id.*

Like Tchankpa's documentation, Miles-El's chronic-care report documented his disability but not why that disability required his requested accommodation. As noted, the report indicated that he had asthma and identified "animals" as one of several aggravating factors. R. 1-1, Chronic Care Report, PageID 21. But it did not explain how severely the exposure to animals affected his asthma or why that exposure required him to be housed away from dogs, and, again, the report indicated that inhalers relieved his symptoms, and those inhalers had been

provided. MDOC therefore requested medical documentation showing why Miles-El's disability required him to be housed away from dogs. Miles-El never provided it.[2]

The Title I principle we apply above is equally warranted under Title II. We have recognized under Title II that a public entity's duty to accommodate requires "an awareness of a plaintiff's specific needs." *Johnson*, 2022 WL 16824202, at *3 (citing *Windham v. Harris County*, 875 F.3d 229, 236–37 (5th Cir. 2017)). But knowledge of a disability described in general terms does not always reveal specific needs. More medical documentation may be needed to identify those needs and allow the entity to determine "whether a need for the accommodation exists." *Kennedy*, 215 F.3d at 656 (citation omitted). In *Johnson*, we relied on the Fifth Circuit's decision in *Windham,* which recognized that a public entity must know the specific needs resulting from a plaintiff's disability to determine whether a requested accommodation is necessary. *Johnson*, 2022 WL 16824202, at *3. The *Windham* court explained that "[m]ere knowledge of the disability is not enough"; the public entity must also know the limitations resulting from that disability. 875 F.3d at 236–37. Without that information, "it would be impossible for the [service] provider to ascertain whether an accommodation is needed at all." *Id.* at 236. Therefore, unless the disability, its resulting limitations, and the necessary accommodation are "open, obvious, and apparent," the plaintiff must identify his disability and its resulting limitations to the public entity. *Id.* at 237 (cleaned up).

Miles-El's failure-to-accommodate claim fails, therefore, because he did not sufficiently document a health condition that required the prison to accommodate him by completely isolating him from dogs.

**2. Intentional Discrimination**

To prevail on an intentional-discrimination theory, a plaintiff must show that the defendant had a discriminatory motive. *Finley*, 102 F.4th at 823. Because Miles-El has not

---

[2]Miles-El fares no better to the extent he relies on a dog allergy distinct from his asthma. Unlike his asthma, Miles-El's dog allergy was not medically documented. Indeed, a health care provider explained that his dog dander allergy had not been confirmed. MDOC therefore could require additional medical information before granting a transfer on that basis as well.

offered direct evidence of State Defendants' discriminatory motive, we consider only his indirect evidence under the *McDonnell Douglas* burden-shifting framework. *See id.* at 823–24. That rubric requires that he first establish a prima facie case by showing that State Defendants "took action" against him "because of [his] disability." *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015). In other words, he must show discriminatory animus. *Id.*

Miles-El points to no evidence connecting either his transfer to Alger or the denial of his requested transfer to discriminatory animus based on his disability. He therefore has not established a prima facie case.

Because both his failure-to-accommodate and intentional-discrimination theories fail, Miles-El has not established the third element of his ADA and RA claims.

### C. Eleventh Amendment and Supplemental Jurisdiction Over State-Law Claims

Because we find that the district court properly granted summary judgment to Pancheri on Miles-El's Eighth Amendment claim and to State Defendants on his ADA and RA claims, we need not address whether the Eleventh Amendment bars Miles-El's claims. And because no federal claims remain, the district court did not abuse its discretion by declining to exercise supplemental jurisdiction over Miles-El's state-law claims.

## IV.

For these reasons, the district court's judgment is **AFFIRMED**.