No. 25-1140

In the
United States Court of Appeals
for the Sixth Circuit

KUSHAWN S. MILES-EL,

*Plaintiff-Appellant*,

v.

MICHIGAN, *et al.*,

*Respondent-Appellant*.

On Appeal from the United States District Court for the Western District of Michigan, Case No. 2:23-cv-31, Hon. Jane M. Beckering, *United States District Judge*

**PLAINTIFF-APPELLANT KUSHAWN S. MILES-EL'S PETITION FOR PANEL OR EN BANC REHEARING**

Shay Dvoretzky
Parker Rider-Longmaid
Steven Marcus
*Counsel of Record*
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
steven.marcus@skadden.com

Samuel Weiss
RIGHTS BEHIND BARS
1800 M. St. NW
Fnt. 1 Suite 33821
Washington, DC 20033

*Counsel for Plaintiff-Appellant Kushawn S. Miles-El*

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ........ iii

RULE 40 STATEMENT AND INTRODUCTION ........ 1

BACKGROUND ........ 2

A. Factual background ........ 2

B. Procedural background ........ 4

REASONS FOR GRANTING THE PETITION ........ 5

I. The panel should grant rehearing to correct legal and factual errors. ........ 5

A. Like the district court, the panel failed to construe the summary judgment evidence in the light most favorable to Mr. Miles-El. ........ 6

B. The panel erred by relying on inapplicable ADA Title I precedent and regulations in interpreting ADA Title II ........ 10

II. The Court should grant rehearing en banc because the opinion's misinterpretation of the ADA and RA conflicts with published opinions from the Seventh and Ninth Circuits on an exceptionally important issue. ........ 14

A. The panel opinion conflicts with a recent published opinion from the Ninth Circuit. ........ 15

B. The panel opinion also conflicts with a decision from the Seventh Circuit ........ 18

CONCLUSION ........ 20

CERTIFICATE OF COMPLIANCE ........ 21

CERTIFICATE OF SERVICE ........ 22

**TABLE OF CONTENTS**
(continued)

**Page**

ADDENDUM.......................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adom v. California Department of Corrections & Rehabilitation*, 190 F.4th 823 (9th Cir. 2026) .......... 1, 15, 16, 17, 18

*EEOC v. Prevo's Family Market, Inc.*, 135 F.3d 1089 (6th Cir. 1998) .......... 12

*Hammoud v. Equifax Information Services, LLC*, 52 F.4th 669 (6th Cir. 2022) .......... 6

*Kennedy v. Superior Printing Co.*, 215 F.3d 650 (6th Cir. 2000) .......... 11, 12, 13

*McDaniel v. Syed*, 115 F.4th 805 (7th Cir. 2024) .......... 1, 18

*McDaniel v. Wisconsin Department of Corrections*, No. 21-3048, 2022 WL 1965902 (7th Cir. June 6, 2022) .......... 19

*Munoz v. California Department of Corrections & Rehabilitation*, 842 F. App'x 59 (9th Cir. 2021) .......... 16

*Tchankpa v. Ascena Retail Group, Inc.*, 951 F.3d 805 (6th Cir. 2020) .......... 11, 12, 13

*Windham v. Harris County*, 875 F.3d 229 (5th Cir. 2017) .......... 8

**CONSTITUTION, STATUTES, AND REGULATION**

U.S. Const. amend. VIII .......... 4, 5

Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* .......... 1, 2, 4, 5, 6, 10, 11, 12, 13, 14, 17, 18, 19

29 U.S.C. § 794(a) .......... 12, 13

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

Americans with Disabilities Act of 1990,
42 U.S.C. § 12101 *et seq.*........................................................................1, 4,
........................................................................................................ 5, 6, 10,
...................................................................................................... 11, 14, 15,
.................................................................................................. 16, 17, 18, 19

42 U.S.C. § 12112(d)(4)(B)............................................................ 1, 2, 5, 10, 11,
........................................................................................ 12, 13, 14, 15, 17

42 U.S.C. § 12132.......................................................................... 1, 2, 4, 5, 10,
........................................................................................ 11, 13, 14, 15, 17

29 C.F.R. § 1630.14(c) ..........................................................................................12

**RULE 40 STATEMENT AND INTRODUCTION**

The panel created a circuit split on an exceptionally important issue, holding that a prison can avoid liability under Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.*, and Section 504 of the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 701 *et seq.*, by requiring additional medical documentation of the need for a disability accommodation. That rule has no basis in the text of Title II or the RA, as the Seventh and Ninth Circuits have correctly held. *See McDaniel v. Syed*, 115 F.4th 805 (7th Cir. 2024); *Adom v. California Department of Corrections & Rehabilitation*, 190 F.4th 823 (9th Cir. 2026). And the rule makes no sense: Because healthcare providers are prison employees, the panel's rule makes the prison the final arbiter of the ADA's applicability. The Court should grant en banc review to correct its legal error.

The panel also made two significant legal errors that warrant panel rehearing. *First*, the panel failed to construe the facts in the light most favorable to Mr. Miles-El, either ignoring summary judgment record evidence that supported Mr. Miles-El's claims or construing the record in the light most favorable to the movants—the Michigan Department of Corrections (MDOC). *Second*, the panel misapplied caselaw applying Title I of the ADA,

which addresses employment discrimination, to Mr. Miles-El's claim under ADA Title II and the RA. Either error warrants panel rehearing.

## BACKGROUND

### A. Factual background

Kushawn Miles-El was incarcerated in the custody of the Michigan Department of Corrections (MDOC) for over 30 years. First R&R, R.23, PageID.273. During that time, MDOC doctors diagnosed him with "severe persistent" asthma aggravated by exposure to "animals." Complaint, R.1, PageID.7.

For the first two decades of his incarceration, Mr. Miles-El's asthma did not prevent him from accessing prison programs or services. But beginning in 2017, MDOC housed Mr. Miles-El in MDOC facilities offering dog training programs. Complaint, R.1, PageID.6. In those facilities, he regularly encountered dogs and thus suffered from severe asthma attacks and related symptoms, including difficulty breathing, chest congestion, and fatigue. Complaint, R.1, PageID.9.

Between 2017 and 2021, MDOC refused to accommodate Mr. Miles-El's disability by maintaining him in facilities where he could not access a host of important programs, benefits, and services offered by MDOC,

because doing so would trigger his severe asthma attacks. For instance, he was forced to refuse medical care for other disabilities because the "prisoner dog handlers bring [dogs] to medlines, and to Health Care with them." Corr. Recs., R.1-2, PageID.22. And he could not go into the prison recreation rooms to use computer kiosks or to exercise, because dogs were present in those areas. Complaint, R.1, PageID.13.

Mr. Miles-El regularly informed MDOC of his disability and his need to be accommodated by removing him from housing units with dogs. He filed numerous grievances and reports with MDOC, informing MDOC officers of his disability and that it was prohibiting him from using dayrooms, kiosks, microwaves, or eating in the cafeteria. Corr. Recs., R.1-15, PageID.39.

MDOC officers were aware both of Mr. Miles-El's disability and of the accommodation necessary for Mr. Miles-El to access MDOC programs and services. MDOC officials admitted that they "witnessed the respiratory and asthma problems" that Mr. Miles-El suffered. Corr. Recs., R.1-2, PageID.22. Indeed, MDOC officers concluded that the "best solution" to accommodate Mr. Miles-El's asthma would be to move him away from dogs. *Id.*

Instead of accommodating Mr. Miles-El's disability, MDOC kept him in facilities where he remained exposed to dogs. And when MDOC *did*

transfer Mr. Miles-El, MDOC expressly chose to transfer Mr. Miles-El to facilities with dog programs, ensuring that he would continue to lose access to prison services and benefits. Complaint, R.1, PageID.8.

### B. Procedural background

Proceeding pro se, Mr. Miles-El sued in the Western District of Michigan, naming MDOC and various prison officers in their official capacities. He alleged that MDOC violated the RA and Title II of the ADA by failing to grant him a reasonable accommodation for his disability and by intentionally discriminating against him because of his disability. Complaint, R.1, PageID.12-13. And he alleged that prison officers, including Officer Adam Pancheri, violated the Eighth Amendment by repeatedly exposing him to dogs knowing that they would trigger his severe asthma attacks. *Id.*

The district court granted summary judgment to MDOC and to Officer Pancheri. As to the RA/ADA claims, the court held that Mr. Miles-El didn't meet his burden at summary judgment to show that he was denied prison services or programs, and that "allegations of inadequate medical treatment do not state a claim for relief under the ADA or RA." Second R&R, R.45, PageID.464. As to the Eighth Amendment, the court held that Officer

Pancheri could not be deliberately indifferent because he relied "on the assessments made by medical staff." *Id.*

This Court affirmed on different grounds. The Court affirmed summary judgment on the Eighth Amendment claim on the ground that qualified immunity applied. Op. 5-7. The panel affirmed on the RA/ADA "failure to accommodate" theory by applying a rule from Title I of the ADA—the Title governing employment discrimination—under which an employer may deny an accommodation if the employee fails to provide requested medical documentation. Op. 8-9. And the panel affirmed on the intentional discrimination theory because it saw no evidence of "discriminatory animus" connecting Mr. Miles-El's treatment with his disability. Op. 10.

## REASONS FOR GRANTING THE PETITION

### I. The panel should grant rehearing to correct legal and factual errors.

Panel rehearing is necessary to correct two major legal errors. The panel failed to construe the evidence in the light most favorable to Mr. Miles-El. The panel also applied a legal rule from Title I of the ADA to the RA and to Title II of the ADA. In so doing, the panel adopted a rule with no basis in statutory text that absolves a defendant of liability in cases where they would otherwise be liable.

### A. Like the district court, the panel failed to construe the summary judgment evidence in the light most favorable to Mr. Miles-El.

The panel erred by committing the same basic legal error in affirming summary judgment that the district court committed: Failing to apply the bedrock law at summary judgment that evidence must be construed in the light most favorable to the nonmovant. *See Hammoud v. Equifax Information Services, LLC*, 52 F.4th 669, 674 (6th Cir. 2022). The panel affirmed summary judgment on both Mr. Miles-El's ADA/RA theories—failure to accommodate and intentional discrimination—but it failed to construe the record in the light most favorable to Mr. Miles-El.

**1.** Start with Mr. Miles-El's failure-to-accommodate theory. The panel affirmed summary judgment for MDOC on one ground: that Mr. Miles-El "did not sufficiently document a health condition that required [MDOC] to accommodate him by completely isolating him from dogs." Op. 9. But the record, evaluated under the correct legal standard, permits a reasonably jury to find that MDOC was aware that Mr. Miles-El needed to be housed apart from dogs. And in any event, the necessary accommodation (removal from exposure to dogs) was obvious, given Mr. Miles-El's disability.

Construing the record evidence in the light most favorable to Mr. Miles-El shows that he met his burden. *First*, the chronic care report from MDOC's own doctors established that Mr. Miles-El has severe persistent asthma aggravated by exposure to animals. Corr. Recs., R.17-3, PageID.217. *Second*, Mr. Miles-El repeatedly told MDOC officials that, notwithstanding the limited treatment that MDOC offered him, he was unable to access prison programs and services because accessing those programs triggered his allergies. *See* Complaint, R.1, PageID.6. *Third*, MDOC officials themselves conceded that in light of Mr. Miles-El's disability, the "best solution" to ensure that Mr. Miles-El could access the programs he was entitled to would be to isolate him from exposure to dogs. Corr. Recs., R.1-2, PageID.22.

The panel failed to draw the favorable inference: that MDOC was aware that exposure to dogs triggered Mr. Miles-El's asthma attacks, that the remedies MDOC offered were insufficient to allow Mr. Miles-El to access programs and benefits, and that the only effective remedy was therefore to separate Mr. Miles-El from the known exposure.

Rather than drawing inferences in favor of the nonmoving party (Mr. Miles-El), the panel drew inferences in favor of the moving party (MDOC). The panel discounted the chronic care report, finding it insufficient because

it did not explain why the disability "required his requested accommodation." Op. 8. But the inference in Mr. Miles-El's favor is that a diagnosis of severe persistent asthma triggered by exposure to animals *is* notice that MDOC should remove the prisoner from exposure to the triggering allergen. On top of that, the panel failed to consider the other paperwork Mr. Miles-El filed with MDOC officials informing them that he couldn't access programs because of his exposure to dogs, and MDOC's own admission that the best solution would be to remove Mr. Miles-El from those facilities. *See supra* p. 7.

Even if Mr. Miles-El had not put MDOC on notice of the necessary accommodation, he is still entitled to a trial on the question of whether the required accommodation was obvious given his disability. The panel correctly recognized that an ADA claimant need not specifically request an accommodation if the necessary accommodation is "open, obvious, and apparent." Op. 9 (quoting *Windham v. Harris County*, 875 F.3d 229, 237 (5th Cir. 2017)). As *Windham* held, "a plaintiff need not request, or even know, the particular reasonable accommodation he ultimately requires." 875 F.3d at 237 n.11. But the panel erred in applying that rule to Mr. Miles-El's asthma attacks. The accommodation for Mr. Miles-El's disability—severe persistent

asthma triggered by exposure to dogs—was obvious: removing Mr. Miles-El from contact with dogs.

**2.** The panel also failed to draw inferences in Mr. Miles-El's favor on the intentional discrimination theory. The panel affirmed summary judgment on that theory because, in the panel's view, Mr. Miles-El had not shown "discriminatory animus" related to MDOC's failure to accommodate his disability. Here again, the panel failed to construe the record evidence in the light most favorable to Mr. Miles-El. That record included sworn statements from Mr. Miles-El that Officer Pancheri, who was in charge of his housing, "ridiculed, criticized, and harassed" Mr. Miles-El "about his serious allergies to dogs." Complaint, R.1, PageID.7. And during the course of his transfer to a facility with dogs, Officer Pancheri told Mr. Miles-El that he could "complain and deal with" his asthma at that facility. Complaint, R.1, PageID.8. The panel didn't discuss that record evidence, which, construed in the light most favorable to Mr. Miles-El, establishes the requisite animus to survive summary judgment.

### B. The panel erred by relying on inapplicable ADA Title I precedent and regulations in interpreting ADA Title II.

The panel erred by applying a rule from Title I of the ADA, which governs employment discrimination, to Mr. Miles-El's RA and ADA Title II claims. That rule—that a public entity on notice of a disability is not liable if the person seeking an accommodation does not provide medical documentation of the need for an accommodation—does not apply to the RA or to Title II of the ADA, so applying it was legal error. The RA contains none of the statutory language that the ADA Title I rule is grounded in, and the panel identified no cases applying that rule to RA claims. Likewise, Title II of the ADA, which prohibits disability discrimination by public entities, uses different language and addresses a different problem than Title I.

**1.** The panel affirmed summary judgment on Mr. Miles-El's failure-to-accommodate theory. Op. 8-9. The panel recognized that Mr. Miles-El presented MDOC with evidence of his disability—a report from an MDOC doctor diagnosing Mr. Miles-El with severe persistent asthma triggered by exposure to animals. *Id.* (citing Chronic Care Report, R.1-1, PageID.21). But the panel held that MDOC did not violate the ADA or RA because it was entitled to demand additional medical documentation "showing why Miles-

El's disability required him to be housed away from dogs." Op. 9. The panel applied a principle from a different provision of the ADA—Title I, which governs workplace disability discrimination. *Id.* The panel relied on Title I decisions holding that the ADA permits an employer to request medical documentation supporting an employee's requested accommodation. *Id.* (citing *Tchankpa v. Ascena Retail Group, Inc.*, 951 F.3d 805 (6th Cir. 2020), and *Kennedy v. Superior Printing Co.*, 215 F.3d 650 (6th Cir. 2000)). The panel applied that rule to Mr. Miles-El's claims under the RA and ADA Title II.

**2.** The panel's reliance on Title I precedent was error. The Title I caselaw the panel relied on has no applicability to public accommodation discrimination under the RA at all, which contains different statutory language. The Title I principle that an employer may "require documentation supporting an employee's requested accommodation," *Tchankpa*, 951 F.3d at 812, has its pedigree in statutes and regulations that apply *only* to Title I and which Congress did not apply to Title II.

Unlike the public access antidiscrimination provision of Title II, Title I explicitly allows that a "covered entity"—in that statute, an employer—"may make inquiries into the ability of an employee to perform job-related functions." 42 U.S.C. § 12112(d)(4)(B). The Equal Employment Opportunity

Commission (EEOC) promulgated regulations implementing that statutory provision. Those regulations allow covered entities to "require a medical examination (and/or inquiry) of an employee that is job-related." 29 C.F.R. § 1630.14(c).

The cases the panel relied on derive their rule from this specific lineage of Title I–only authority. The cases begin with *EEOC v. Prevo's Family Market, Inc.*, 135 F.3d 1089, 1094-95 (6th Cir. 1998), an ADA Title I decision that interpreted § 12112(d)(4)(B) and its implementing regulations to hold that an employer can request medical documentation of an employee's need for an accommodation. That holding, together with Title I's implementing regulations, was the basis for this Court's decision in *Kennedy*, 215 F.3d at 656, another ADA Title I case. And *Tchankpa* relied on *Kennedy* for its medical-documentation rule. 951 F.3d at 813.

The panel erred by relying on that ADA Title I rule to resolve Mr. Miles-El's RA claim. The RA contains *none* of the relevant statutory or regulatory language that formed the basis of the panel's rule. The RA simply prohibits entities receiving federal funds from denying qualified disabled individuals the benefits of programs or activities. 29 U.S.C. § 794(a). A covered entity violates the RA when it excludes a qualified person from

programs or activities solely by reason of disability. *Id.* There is no exception to that clear-cut rule for public entities to demand additional medical documentation—and certainly nothing resembling the statutory hook in Title I that *Tchankpa* and *Kennedy* relied on.

The panel also erred by applying the ADA Title I rule to Mr. Miles-El's ADA Title II claim. None of the bases underlying the rule in the Title I context applies to Title II. Most importantly, the statutory basis for the Title I rule doesn't appear in Title II. Unlike Title I, Title II's antidiscrimination provision simply guarantees that qualified individuals with a disability cannot be denied "services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. There is no statutory provision in Title II that allows a covered entity to defeat liability by demanding additional medical documentation from a person requesting an accommodation. Nor are there any regulations like those the Title I cases relied on that confer any such defense. The panel's holding affirming summary judgment on Mr. Miles-El's RA and ADA claims rested on this misapplication of law.

Finally, it makes no conceptual sense to import this particular Title I rule into Title II: Unlike employees in a workplace, who have their own

healthcare, the healthcare providers for prisoners like Mr. Miles-El are employed by the defendant prison. Allowing the prison to impose a medical documentation requirement makes the prison the final arbiter of the ADA's reach, which cannot be right.

The panel should grant rehearing to correct this error.

## II. The Court should grant rehearing en banc because the opinion's misinterpretation of the ADA and RA conflicts with published opinions from the Seventh and Ninth Circuits on an exceptionally important issue.

If the panel does not grant rehearing to correct its erroneous application of ADA Title I rules to ADA Title II and the RA, the Court should grant rehearing en banc. Relying on ADA Title I precedent, the panel affirmed summary judgment on Mr. Miles-El's failure-to-accommodate theory on the ground that MDOC was entitled to demand additional medical documentation "showing why Miles-El's disability required him to be housed away from dogs." Op. 9; *see supra* pp. 10-11. The panel's importation of Title I's medical documentation rule to Title II conflicts with published opinions from the Seventh and Ninth Circuits that reject the same rule the panel adopted here. Meanwhile, no other court of appeals has applied the ADA

Title I rule in the manner the panel did. En banc review is necessary to correct this lopsided split.

### A. The panel opinion conflicts with a recent published opinion from the Ninth Circuit.

The panel opinion conflicts with a recent published opinion of the Ninth Circuit, which held that a prison's requirement of medical documentation cannot itself determine whether an accommodation is required under ADA Title II. *Adom*, 190 F.4th at 832.

In *Adom*, a prisoner in a California state facility sued the prison system, alleging that it violated the ADA by failing to accommodate his incontinence. *Id.* at 826. The plaintiff was issued a weekly supply of adult diapers as an accommodation for his incontinence. For a period of five months, the prison refused to provide the plaintiff with diapers. *Id.* at 827-28. During that time, the plaintiff soiled himself repeatedly, harming his physical and mental health. *Id.* After a prison doctor diagnosed the plaintiff with an enlarged prostate, the prison restored the plaintiff's diaper supply. *Id.*

In defense, the prison argued that the plaintiff failed to meet the ADA's causation requirement because prior to the enlarged prostate diagnosis, the prison determined the plaintiff "did not have a medical need" for diapers.

*Id.* at 836. The prison's defense relied on a state prison policy, which requires the identification of "an underlying medical condition" before diapers can be issued. *Id.* at 839.

The Ninth Circuit rejected the prison's argument. As the panel explained, the term "disability" under the ADA is expansive, and it is "not limited to conditions with clear diagnoses or medical indications." *Id.* The statutory framework does not turn on medical diagnoses or internal medical accommodation programs. *Id.* Thus, the ADA requires a public entity to "provide a reasonable accommodation even when the accommodation has not been prescribed by a medical professional and even when state policy requires the prior identification of a medical condition before issuing supplies through a medical equipment program." *Id.* So it is no defense at all, *Adom* held, that the prison system's policy required a medical diagnosis by prison doctors to provide the requested accommodation. To hold otherwise would "give an institutional actor like [the state prison system], which controls the relevant medical staff, total control over the realization of the protections afforded by the ADA." *Id.*; *see also Munoz v. California Department of Corrections & Rehabilitation*, 842 F. App'x 59, 62 (9th Cir. 2021).

The panel in this case split from the Ninth Circuit by reaching the opposite conclusion. The panel affirmed summary judgment for the prison on Mr. Miles-El's ADA and RA claims because the prison system "requested medical documentation showing why Miles-El's disability required him to be housed away from dogs," but Mr. Miles-El never provided it. Op. 9. That error is no different from the error the Ninth Circuit reversed in *Adom*.

The Ninth Circuit's opinion also shows why the panel's atextual reading of Title II and the RA was wrong. In the employment context, to which Title I applies, when an employer requests additional medical documentation from an employee, the employee can obtain that documentation from a third-party healthcare provider. But in the Title II context, at least for prisoners, when the prison requests additional medical documentation from a prisoner, the prisoner can only obtain that documentation from a healthcare provider who works for the prison. The Ninth Circuit correctly recognized that applying the Title I medical documentation rule in this context would make the covered entity (the prison) the final arbiter of the ADA's reach.

### B. The panel opinion also conflicts with a decision from the Seventh Circuit.

The Seventh Circuit applies the same rule that the Ninth Circuit adopted in *Adom*, so the panel opinion splits with the Seventh Circuit as well.

In *McDaniel*, the Seventh Circuit rejected the prison's defense that a prisoner did not meet the prison's criteria for placement in a no-stairs housing unit, holding that the prisoner had presented a triable issue on whether denying him access to an accessible unit was a failure to accommodate his disabilities. 115 F.4th at 818, 829. The prison argued that its medical staff evaluated the prisoner many times and "determined his requested accommodations were not medically necessary" under the prison's policies. *Id.* at 826 n.15. And the prison contended that it offered the prisoner other treatments for his disability, including physical therapy and pain medication. *Id.* at 818. The Seventh Circuit rejected those arguments: "Defendants cannot avoid liability" under the ADA and RA by pointing to their own internal determinations about what is "medically necessary." *Id.* at 826 n.15. Even when a prison acts in accord with its own policies and rejects a requested accommodation based on its own internal medical policies, that rejection might still violate the ADA or RA. *Id.* at 828.

That holding echoes the Seventh Circuit's holding in an unpublished opinion in a related case. In that case, the district court denied a preliminary injunction because a prison doctor concluded that the prisoner's disability "did not meet the requirements" for an accommodation, so the prisoner did not have "an order for any of the other accommodations he claims." *McDaniel v. Wisconsin Department of Corrections*, No. 21-3048, 2022 WL 1965902, at *1 (7th Cir. June 6, 2022). That was error, because the "federal court, not the prison, determines how federal statutes apply to a prisoner's medical conditions." *Id.* The ADA contains no requirement for an "'order' from someone at the prison" to provide relief. *Id.*

The panel here came to the opposite conclusion. The panel deferred to MDOC's internal requirement that a prisoner obtain a "medical detail" before granting an accommodation. But the panel didn't inquire whether MDOC's own failure to grant a medical detail could itself have violated the ADA or RA. The Seventh Circuit rejected that approach, and this Court should grant rehearing en banc to align with the approach of the Seventh and Ninth Circuits.

## CONCLUSION

The Court should grant panel rehearing or, alternatively, rehearing en banc.

Dated: October 23, 2026

Respectfully submitted,

/s/ Steven Marcus

Shay Dvoretzky
Parker Rider-Longmaid
Steven Marcus
*Counsel of Record*
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
steven.marcus@skadden.com

Samuel Weiss
RIGHTS BEHIND BARS
1800 M. St. NW
Fnt. 1 Suite 33821
Washington, DC 20033

*Counsel for Plaintiff-Appellant Kushawn S. Miles-El*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this document complies with the type-volume limitation of Federal Rule of Appellate Procedure 40(d)(3)(A) because, as calculated by Microsoft Word, it contains 3,838 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(b)(1). I also certify that this brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) and Circuit Rule 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Book Antiqua font.

Dated: October 23, 2026

Respectfully submitted,

*/s/ Steven Marcus*

Steven Marcus
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
202-371-7000
steven.marcus@skadden.com

*Counsel for Plaintiff-Appellant Kushawn S. Miles-El*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2026, I electronically filed this brief and addendum with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: October 23, 2026

Respectfully submitted,

*/s/ Steven Marcus*
Steven Marcus
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
202-371-7000
steven.marcus@skadden.com

*Counsel for Plaintiff-Appellant Kushawn S. Miles-El*

# ADDENDUM

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0280p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

KUSHAWN S. MILES-EL,
*Plaintiff-Appellant*,

*v*.

STATE OF MICHIGAN; MICHIGAN DEPARTMENT OF CORRECTIONS; BUREAU OF HEALTH CARE SERVICES; ADAM PANCHERI; SARAH SCHROEDER; DEAN POTILA,
*Defendants-Appellees*.

No. 25-1140

Appeal from the United States District Court for the Western District of Michigan at Marquette.
No. 2:23-cv-00031—Jane M. Beckering, District Judge.

Argued: July 29, 2026

Decided and Filed: October 9, 2026

Before: McKEAGUE, SUTTON, and BUSH, Circuit Judges.

## COUNSEL

**ARGUED:** Steven D. Marcus, SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP, Washington, D.C., for Appellant. Christopher Alex, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees. **ON BRIEF:** Steven D. Marcus, Shay Dvoretzky, Parker Rider-Longmaid, SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP, Washington, D.C., Samuel Weiss, RIGHTS BEHIND BARS, Washington, D.C., for Appellant. Joshua S. Smith, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees.

---

**OPINION**

---

JOHN K. BUSH, Circuit Judge. Kushawn Miles-El is a former Michigan Department of Corrections (MDOC) prisoner with asthma and an alleged allergy to dogs. While incarcerated, he sued over his exposure to dogs at MDOC facilities. He claimed that Prison Counselor Adam Pancheri's failure to isolate him from dog dander violated the Eighth Amendment's prohibition of "cruel and unusual punishments inflicted," as applied to the States by the Fourteenth Amendment. Miles-El also claimed that MDOC and other state entities (State Defendants) violated Section 504 of the Rehabilitation Act (RA), Title II of the Americans with Disabilities Act (ADA), the Michigan Constitution, and the Michigan Persons with Disabilities Civil Rights Act. Pancheri and State Defendants moved for summary judgment, and the district court granted that motion. For the following reasons, we **AFFIRM.**

**I.**

Miles-El was incarcerated in MDOC prisons for more than 30 years. In 2017, MDOC transferred him to Muskegon, a facility that housed dogs for training purposes. According to Miles-El, he began experiencing "severe allergic reactions" when he would come into close contact with dogs. R. 1, Compl., PageID 9. He alleges that he suffered watery eyes, skin rashes, asthma attacks, chest congestion, difficulty breathing, and respiratory and sinus infections. He alerted MDOC officials to his symptoms, and his medical provider completed a report (chronic-care report) noting that he had "severe persistent" asthma that was aggravated by "animals, change in weather, exercise and pollen." R. 1-1, Chronic Care Report, PageID 21. This report also noted that inhalers relieved his symptoms, and the provider prescribed several respiratory treatments, including steroids, inhalers, a nebulizer, and a nasal spray.

MDOC later transferred Miles-El to Chippewa, another facility that housed dogs. Miles-El claimed that exposure to dogs caused asthma attacks and allergic reactions. He then invoked MDOC's three-step grievance process, under which a prisoner files a grievance at Step I, may appeal a denial at Step II, and may appeal once more at Step III.

At Step I, Miles-El complained that he was exposed to "animal[s], dust, lint, particles, dander, wool, ragweed, pollen" and "other" things to which he had "severe" allergies. R. 1-2, Step I Grievance Response, PageID 22. A Chippewa counselor contacted a medical provider, who confirmed that Miles-El had asthma but explained that his alleged dog dander allergy "ha[d] not been confirmed" because no documentation supported it beyond a "generalized description." *Id.* The provider also explained that animal dander would always aggravate[1] asthma. The counselor decided to move Miles-El to the East side of Chippewa, where dogs were not allowed.

Miles-El appealed at Step II. He complained that the move had not resolved the problem because he still had to visit the West side, where dogs were permitted, for programming. He also complained that the East side was more restrictive. The Chippewa Warden denied the appeal, concluding that the Step I response was satisfactory and noting that Miles-El's medical documents did not mention a dog dander allergy.

Miles-El appealed again at Step III, reasserting his earlier complaints and this time requesting transfer "to a facility without dogs." R. 1-3, Step III Grievance, PageID 24. The Office of Legal Affairs denied the appeal, concluding that Miles-El's concerns had been considered and investigated and that the Step II decision was proper.

After Miles-El was elected "Unit Block Representative" at Chippewa, R. 1, Compl., PageID 8 ¶ 37, he alleges that Officer Adam Pancheri, a prison counselor, responded angrily. Miles-El claims that Pancheri threatened to transfer him to Alger, another MDOC facility, so that "someone else [could] deal with him and his grievances and complaints." *Id.*

Miles-El was transferred to Alger in 2020. He claims that Pancheri transferred him to Alger, where he was "guaranteed" to be around dogs. Appellant Br. at 11. However, Chippewa's Transfer Coordinator, Debra Petersen, declared that Pancheri did not select Miles-El for a transfer, lacked the authority to do so, and was responsible only for "prepar[ing] a security classification screen." R. 34-7, Petersen Decl., PageID 378. According to Petersen, the Correctional Facilities Administration oversees the transfer of all prisoners between MDOC

[1]The report indicates that dogs were a "mitigating" factor, but in context, the provider clearly meant to say "aggravating."

facilities and Miles-El was transferred to accommodate bedspace needs. *Id.* at 377. Pancheri likewise claimed that he lacked authority to transfer Miles-El or determine where MDOC would transfer a prisoner.

At Alger, Miles-El filed an ADA accommodation request seeking placement away from housing units with dogs. Deputy Warden Dean Potila denied the request, explaining that, under MDOC policy, Miles-El had to raise his medical concerns with Health Services, which had no record that he had a dog allergy. Potila further explained that he would submit a transfer request if Miles-El obtained a medical detail from a healthcare provider establishing his medical need to be housed away from dogs.

Miles-El makes no allegation that, while at Chippewa or Alger, he ever obtained the medical detail Potila required. Instead, proceeding pro se, Miles-El sued Pancheri, State Defendants, and other prison officials, asserting claims under the Eighth Amendment, the ADA, the RA, and state law. The primary claims on appeal are his Eighth Amendment claim against Pancheri and ADA and RA claims against State Defendants. The district court granted summary judgment to the relevant defendants on those claims. As to the Eighth Amendment claim, the court concluded that Pancheri was not deliberately indifferent because prison officials consulted medical staff, who indicated that Miles-El did not need a medical transfer. R. 48, Second MSJ Op., PageID 502. As to the ADA and RA claims, the court concluded that inadequate medical treatment is not actionable under either statute and that Miles-El failed to show that he was denied the benefits of prison services or programs. The court also declined to exercise supplemental jurisdiction over Miles-El's state-law claims.

Miles-El timely appealed.

**II.**

We review de novo a district court's grant of summary judgment. *Finley v. Huss*, 102 F.4th 789, 804 (6th Cir. 2024). Summary judgment is appropriate when there are no disputes of material fact and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, we view the facts in the light most favorable to Miles-El, as the nonmovant, and we "draw all reasonable inferences" in his favor.

*Lawson v. Creely*, 137 F.4th 404, 411 (6th Cir. 2025) (citation omitted). Also, "we may affirm on any grounds supported by the record, even if they are different from the grounds the district court relied upon in reaching its summary judgment decision below." *Gammons v. Adroit Med. Sys., Inc.*, 91 F.4th 820, 825 (6th Cir. 2024).

**III.**

Miles-El advances several arguments on appeal. He first challenges the grant of summary judgment to Pancheri on his Eighth Amendment claim. He next challenges the grant of summary judgment to State Defendants on his ADA and RA claims. He also argues that the Eleventh Amendment does not bar his ADA and RA claims and that the district court abused its discretion by declining to exercise supplemental jurisdiction over his state-law claims.

**A. Eighth Amendment Claim**

Miles-El contends that Pancheri was deliberately indifferent to his serious medical needs by failing to transfer him to a prison without a dog program. He argues that a genuine dispute over Pancheri's transfer authority precludes summary judgment. But that alleged factual issue is not material if summary judgment may be affirmed on a legal ground independent of the factual issue's resolution. *Linden v. Piotrowski*, 619 F. App'x 495, 501 (6th Cir. 2015). Here, Pancheri's assertion of qualified immunity is such an independent legal ground. The district court did not rule on qualified immunity, but Pancheri raised this protection below and reasserts it on appeal.

To overcome qualified immunity, Miles-El must show that Pancheri "violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). A right is clearly established if "every reasonable official would have understood that what he is doing violates that right." *Id.* (cleaned up). The right asserted here by Miles-El is that an officer violates the Eighth Amendment "by declining to transfer a prisoner with asthma to a facility without a dog program or by transferring that prisoner to a facility with a dog program." Appellee Br. at 42–43; *see* Appellant Br. at 59.

Miles-El first relies on *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and *Estelle v. Gamble*, 429 U.S. 97, 101–06 (1976), which state general Eighth Amendment principles. But cases stating only general principles are not enough to deprive an officer of qualified immunity. *See, e.g.*, *Richardson v. Falk*, 184 F.4th 833, 840 (6th Cir. 2026). A case must specifically address the issue presented to be considered clearly established law on that issue. *White v. Pauly*, 580 U.S. 73, 79 (2017).

The closest cases Miles-El cites for clearly established law are two decisions involving prisoners exposed to tobacco smoke. *See Hunt v. Reynolds*, 974 F.2d 734 (6th Cir. 1992); *see also Helling v. McKinney*, 509 U.S. 25 (1993). But those cases concern situations afield from the facts here. *Hunt* held that forcing a prisoner to share his cell with an inmate who smokes violates the Eighth Amendment's objective component when the prisoner has a "serious medical need for a smoke-free environment." 974 F.2d at 736. That is because the Eighth Amendment may protect against confinement conditions that pose a "serious health threat" but not those that cause "mere discomfort or inconvenience." *Id.* at 735 (citation omitted). *Helling* then clarified that a risk of *future* harm from tobacco smoke can constitute a serious health threat. 509 U.S. at 32–35.

Neither case clearly established that the Eighth Amendment required Pancheri to transfer Miles-El to a prison without a dog program. In *Hunt*, despite the prisoners' pulmonary and heart disease, we remanded to determine whether tobacco-smoke exposure posed a sufficiently serious threat to their health. 974 F.2d at 735–36. Here, Miles-El's chronic-care report did not specifically address any dog dander allergy. It documented only his asthma generally and identified "animals" as one of several aggravating factors, along with "change in weather, exercise and pollen." R. 1-1, Chronic Care Report, PageID 21. Such a broad description of Mile-El's asthma, encompassing a list of things that everyone encounters in life, gives us pause before concluding that the report could have given prison officials sufficient notice that Miles-El's exposure to dogs in particular would constitute an infliction of "cruel and unusual punishment[]." U.S. Const. amend. VIII. Even focusing only on the mention of "animals," the report did not indicate how severely animal exposure affected him or what kinds of animals or degree of exposure triggered his symptoms. And notably, the report also indicated that inhalers

relieved his symptoms. That was the very remedy that prison officials provided. Also, after Miles-El complained about exposure to dogs, a counselor contacted a healthcare provider, who said that Miles-El had no confirmed dog allergy, explained that animal dander always aggravates asthma, but did not advise complete separation from dogs as the only available treatment for Mile-El's condition. R. 1-2, Step I Grievance at URF, PageID 22. These circumstances contrast with those in *Hunt*, where there was confirmed linkage between the prisoners' disease and tobacco-smoke exposure and eliminating that exposure was the only available means of addressing their health problems. *See* 974 F.2d at 735–36. Therefore, *Hunt* did not clearly establish that housing Miles-El at a prison with a dog program posed a sufficiently serious health threat to require his transfer. Nor did *Helling*, which established only that sufficiently serious risks of tobacco-smoke exposure to future health can implicate the Eighth Amendment. 509 U.S. at 32–35.

Therefore, Pancheri is entitled to qualified immunity on Miles-El's Eighth Amendment claim.

**B. ADA and RA Claims**

Title II of the ADA and Section 504 of the RA both "prohibit public or federally funded entities, including prisons, from discriminating against disabled individuals while operating services or programs." *Finley*, 102 F.4th at 819–20. We typically "evaluate ADA and RA claims together." *Id.* at 820. To succeed on his ADA and RA claims, Miles-El must show that "(1) he has a qualifying disability, (2) he is otherwise qualified for a program, and (3) he was excluded from participation in, denied the benefits of, or subjected to discrimination under a program because of his disability." *Id.* He may establish the third element through proof either of a failure to accommodate or of intentional discrimination, and to succeed on his RA claim, Miles-El must also show that MDOC officials discriminated against him "solely" because of his disability. *Id.* We address the contested elements of these claims below.

**1. Failure to Accommodate**

To prevail under a failure-to-accommodate theory, Miles-El must show that a transfer to a dog-free facility was "necessary to avoid discrimination on the basis of [his] disability." *Id.* at 821 (citation omitted).

We examine Title I principles to determine whether Miles-El showed that his transfer was necessary. We have often considered Title I principles that cover employment and Title III principles that cover places of public accommodation when resolving failure-to-accommodate claims under Title II. *See Marble v. Tennessee*, 767 F. App'x 647, 650–52 (6th Cir. 2019); *Johnson v. Dobbins*, No. 22-5310, 2022 WL 16824202, at *3 (6th Cir. Nov. 8, 2022); *Peroli v. Huber*, No. 21-3202, 2021 WL 5411215, at *11 (6th Cir. Nov. 19, 2021). In *Marble*, for instance, we applied the Title I principle that a plaintiff bears the initial burden to request an accommodation because a covered entity should not have to speculate about the plaintiff's limitations or need for accommodation. 767 F. App'x at 652 (citing *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046–47 (6th Cir. 1998)).

Under Title I, an employer may require medical documentation showing that an employee's disability requires the requested accommodation. *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 812–14 (6th Cir. 2020); *Kennedy v. Superior Printing Co.*, 215 F.3d 650, 656 (6th Cir. 2000). In *Tchankpa*, an employee with a shoulder injury requested to work from home three days per week. 951 F.3d at 809–10. His medical documentation confirmed the injury but did not explain why it required him to work from home. *Id.* at 813–14. The employer requested medical documentation establishing that connection, and when Tchankpa failed to provide it, we held that the employer had no duty to grant the requested accommodation. *Id.*

Like Tchankpa's documentation, Miles-El's chronic-care report documented his disability but not why that disability required his requested accommodation. As noted, the report indicated that he had asthma and identified "animals" as one of several aggravating factors. R. 1-1, Chronic Care Report, PageID 21. But it did not explain how severely the exposure to animals affected his asthma or why that exposure required him to be housed away from dogs, and, again, the report indicated that inhalers relieved his symptoms, and those inhalers had been

provided. MDOC therefore requested medical documentation showing why Miles-El's disability required him to be housed away from dogs. Miles-El never provided it.[2]

The Title I principle we apply above is equally warranted under Title II. We have recognized under Title II that a public entity's duty to accommodate requires "an awareness of a plaintiff's specific needs." *Johnson*, 2022 WL 16824202, at *3 (citing *Windham v. Harris County*, 875 F.3d 229, 236–37 (5th Cir. 2017)). But knowledge of a disability described in general terms does not always reveal specific needs. More medical documentation may be needed to identify those needs and allow the entity to determine "whether a need for the accommodation exists." *Kennedy*, 215 F.3d at 656 (citation omitted). In *Johnson*, we relied on the Fifth Circuit's decision in *Windham,* which recognized that a public entity must know the specific needs resulting from a plaintiff's disability to determine whether a requested accommodation is necessary. *Johnson*, 2022 WL 16824202, at *3. The *Windham* court explained that "[m]ere knowledge of the disability is not enough"; the public entity must also know the limitations resulting from that disability. 875 F.3d at 236–37. Without that information, "it would be impossible for the [service] provider to ascertain whether an accommodation is needed at all." *Id.* at 236. Therefore, unless the disability, its resulting limitations, and the necessary accommodation are "open, obvious, and apparent," the plaintiff must identify his disability and its resulting limitations to the public entity. *Id.* at 237 (cleaned up).

Miles-El's failure-to-accommodate claim fails, therefore, because he did not sufficiently document a health condition that required the prison to accommodate him by completely isolating him from dogs.

**2. Intentional Discrimination**

To prevail on an intentional-discrimination theory, a plaintiff must show that the defendant had a discriminatory motive. *Finley*, 102 F.4th at 823. Because Miles-El has not

[2]Miles-El fares no better to the extent he relies on a dog allergy distinct from his asthma. Unlike his asthma, Miles-El's dog allergy was not medically documented. Indeed, a health care provider explained that his dog dander allergy had not been confirmed. MDOC therefore could require additional medical information before granting a transfer on that basis as well.

offered direct evidence of State Defendants' discriminatory motive, we consider only his indirect evidence under the *McDonnell Douglas* burden-shifting framework. *See id.* at 823–24. That rubric requires that he first establish a prima facie case by showing that State Defendants "took action" against him "because of [his] disability." *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015). In other words, he must show discriminatory animus. *Id.*

Miles-El points to no evidence connecting either his transfer to Alger or the denial of his requested transfer to discriminatory animus based on his disability. He therefore has not established a prima facie case.

Because both his failure-to-accommodate and intentional-discrimination theories fail, Miles-El has not established the third element of his ADA and RA claims.

**C. Eleventh Amendment and Supplemental Jurisdiction Over State-Law Claims**

Because we find that the district court properly granted summary judgment to Pancheri on Miles-El's Eighth Amendment claim and to State Defendants on his ADA and RA claims, we need not address whether the Eleventh Amendment bars Miles-El's claims. And because no federal claims remain, the district court did not abuse its discretion by declining to exercise supplemental jurisdiction over Miles-El's state-law claims.

## IV.

For these reasons, the district court's judgment is **AFFIRMED**.