No. 25-1140

In the
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

KUSHAWN S. MILES-EL,

Plaintiff-Appellant,

v.

STATE OF MICHIGAN, individual and official capacities; MICHIGAN DEPARTMENT OF CORRECTIONS, official capacities; BUREAU OF HEALTH CARE SERVICES, individual and official capacities; ADAM PANCHERI, Prisoner Counselor, individual and official capacities; SARAH SCHROEDER, Warden, individual and official capacities; DEAN POTILA, Deputy Warden, ADA Coordinator, individual and official capacities,

Defendants-Appellees,

AND

HEIDI E. WASHINGTON, MDOC DIRECTOR, INDIVIDUAL AND OFFICIAL CAPACITIES, ET AL.

Defendant.

Appeal from the United States District Court
Western District of Michigan, Southern Division
Honorable Jane M. Beckering

**APPELLEES' RESPONSE IN OPPOSITION TO THE PETITION FOR REHEARING EN BANC**

Chris Alex
Assistant Attorney General
Counsel of Record
Attorney for Defendants-Appellees
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055

Dated: November 10, 2026

# TABLE OF CONTENTS

Page


Table of Authorities .................................................................... ii

Introduction .................................................................... 1

Standard of Review .................................................................... 2

Argument .................................................................... 2

I. Miles-El does not seek en banc review of the panel's treatment of the factual record, and panel rehearing on that issue is not warranted. .................................................................... 2

II. En banc review of the ADA and RA claims is not warranted. ........ 7

A. The panel properly looked to Title I precedent in requiring documentation that Miles-El's asthma necessitated isolation from dogs, and its decision does not conflict with precedent from this Court or any other circuit. .................................................................... 7

B. The case is a poor vehicle for the en banc review because the full Court would have to decide questions the panel did not reach. .................................................................... 14

Conclusion and Relief Requested .................................................................... 17

Certificate of Compliance .................................................................... 18

Certificate of Service .................................................................... 19

## TABLE OF AUTHORITIES

Page

**Cases**

*A.J.T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*, 605 U.S. 335 (2025). .......... 15

*Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901 (6th Cir. 2004) .......... 14

*Adom v. Cal. Dep't of Corr. & Rehab.*, 190 F.4th 823 (9th Cir. 2026) .......... 11, 12

*Barnes v. Gorman*, 536 U.S. 181 (2002) .......... 14

Bartlett ex rel. Neuman v. Bowen, 824 F.2d 1240 (D.C. Cir. 1987) .......... 2

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) .......... 14

*Compare Douglas v. Muzzin*, No. 21-2801, 2022 U.S. App. LEXIS 21529, at *23–24 (6th Cir. Aug. 3, 2022) .......... 15

*Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001) .......... 12

*Finley v. Huss*, 102 F.4th 789 (6th Cir. 2024) .......... 6

*Gohl v. Livonia Pub. Sch. Dist.*, 836 F.3d 672 (6th Cir. 2016) .......... 15

*Hibbert v. MC Realty Grp., LLC*, 183 F.4th 1013 (8th Cir. 2026) .......... 13

*Hopson v. DaimlerChrysler Corp.*,
306 F.3d 427 (6th Cir. 2002) .......... 5

*Johnson v. Dobbins*,
No. 22-5310, 2022 U.S. App. LEXIS 31165, at *7–9 (6th Cir. Nov. 8, 2022) .......... 13

*Kennedy v. Superior Printing Co.*,
215 F.3d 650 (6th Cir. 2000) .......... 8

*Marble v. Tennessee*,
767 F. App'x 647 (6th Cir. 2019) .......... 13

*McDaniel v. Syed*,
115 F.4th 805 (7th Cir. 2024) .......... 11, 12

*Miles-El v. Michigan*,
No. 25-1140, 2026 U.S. App. LEXIS 30901 (6th Cir. Oct. 9, 2026) .......... passim

*Mitts v. Bagley*,
626 F.3d 366 (2010) .......... 3

*Pack v. Damon Corp.*,
434 F.3d 810 (6th Cir. 2006) .......... 5

*Peroli v. Huber*,
No. 21-3202, 2021 U.S. App. LEXIS 34515, at *29–30 (6th Cir. Nov. 19, 2021) .......... 13

*R.K. v. Bd. of Educ. of Scott Cnty.*,
637 F. App'x 922 (6th Cir. 2016) .......... 15

*Tchankpa v. Ascena Retail Grp., Inc.*,
951 F.3d 805 (6th Cir. 2020) .......... 7, 8, 13

*United States v. Georgia*,
546 U.S. 151 (2006) .......... 16

*Windham v. Harris Cnty.*,
875 F.3d 229 (5th Cir. 2017) .......... 11, 12

**Other Authorities**

Americans with Disabilities Act (ADA) .......................................... passim

Rehabilitation Act (RA) .................................................................... 1, 7

**Rules**

6 Cir. I.O.P. 40(b)(1) ........................................................................ 3

Fed. R. App. P. 40 .............................................................................. 1

Fed. R. App. P. 40 (c) ......................................................................... 2

Fed. R. App. P. 40(b)(2)(C) ............................................................... 13

## INTRODUCTION

The petition for en banc rehearing should be denied because it falls short of the exacting standards of Federal Rule of Appellate Procedure 40. In an opinion recommended for publication, the panel unanimously (1) concluded that Miles-El could not sustain an Eighth Amendment claim because he did not overcome qualified immunity, (2) held that the district court properly declined supplemental jurisdiction over various state law claims, and (3) held that Defendants were entitled to summary judgment on the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA) claims. *Miles-El v. Michigan*, No. 25-1140, 2026 U.S. App. LEXIS 30901 (6th Cir. Oct. 9, 2026). The petition seeks rehearing only for the ADA and RA claims.

The panel correctly resolved the ADA and RA claims. Miles-El tacitly acknowledges that the decision does not conflict with Supreme Court or Sixth Circuit precedent. And the decision does not create the circuit split he alleges. The matter does not involve error, much less one of exceptional importance. The petition should be denied.

## STANDARD OF REVIEW

En banc review is "not favored." Fed. R. App. P. 40(c). It is "an extraordinary request intended to bring to the attention of the entire court a precedent-setting error of exceptional public importance or an opinion that directly conflicts with Supreme Court or Sixth Circuit precedent." 6 Cir. I.O.P. 40(b)(1). Summed up aptly,

> [t]he decision to grant en banc consideration is unquestionably among the most serious non-merits determinations an appellate court can make, because it may have the effect of vacating a panel opinion that is the product of a substantial expenditure of time and effort by three judges and numerous counsel. Such a determination should be made only in the most compelling circumstances.

*Bartlett ex rel. Neuman v. Bowen*, 824 F.2d 1240, 1243–44 (D.C. Cir. 1987) (Edwards, J., concurring in the denials of reh'g en banc).

## ARGUMENT

### I. Miles-El does not seek en banc review of the panel's treatment of the factual record, and panel rehearing on that issue is not warranted.

Miles-El seeks panel rehearing on two grounds: (1) that the panel failed to draw certain factual inferences in his favor (Pet. at 6–9), and (2) that it erred by looking to Title I precedent (*id.* at 10–14). He seeks en banc review, in the alternative, only on the second ground, and he

contends that the panel's holding conflicts with decisions of the Seventh and Ninth Circuits.[1] (*Id.* at 14–19.) This Court called for a response to the en banc request only, and therefore, Miles-El's first ground for panel rehearing falls outside the scope of this response. It fails in any event.

Miles-El was correct to confine his factual-inferences argument to panel rehearing. In the "run-of-the-mine case," disagreement with the panel's decision on the merits "rarely suffices" to warrant en banc review. *Mitts v. Bagley*, 626 F.3d 366, 370 (6th Cir. 2010) (Sutton, J., concurring in the denial of reh'g en banc). "If the goal is to produce consistent and principled circuit law, moreover, it is fair to wonder whether a process that requires a majority of circuit judges to sit in judgment of two or three colleagues does more to help than to deter that objective, particularly when the central ground for review is mere disagreement on the merits." *Id.* Thus, "[a]lleged errors . . . in the facts of the case (including sufficient evidence), or errors in the application of correct precedent to the facts of the case, are matters for panel rehearing but not for rehearing en banc." 6 Cir. I.O.P. 40(b)(1).

[1] Part II addresses that ground.

Nor do those arguments warrant panel rehearing. Miles-El endeavors to reframe the panel's treatment of some underlying facts as "legal error," but this branding by Miles-El's is off base. Properly distilled, Miles-El is simply arguing that various facts or related inferences should have tipped the decision in his favor. This is no different from arguing "the panel got it wrong." To hold otherwise would mean any petitioner could, pro forma, rebrand his disagreement with the outcome as a "legal error." Accordingly, as a threshold matter, Miles El's first basis for panel rehearing is unavailing.

Moreover, the panel did not err by declining to draw the inference Miles-El claims should have been drawn—that, based on his asthma, a need to *isolate* him from *dogs* was *obvious*. The record does not support this inference. For one thing, the focal point of Miles-El's argument is a healthcare report from years prior to his claim. (Chronic Care Report, R. 1-1, Page ID # 21.) The report does not mention dogs specifically or any dog allergy, or a need to house him in any particular manner, much less to isolate him from dogs. (*Id.*) Rather, it states that Miles-El had asthma, that his asthma was aggravated by what the panel called "a list of things that everyone encounters in life" (changes in weather,

pollen, exercise, animals), and, notably, that his asthma symptoms were alleviated by his prescribed inhaler. (*Id.*; *Miles-El*, 2026 U.S. App. LEXIS 30901, at *9.) So, Miles-El is incorrect to suggest that this report made obvious that, years later, his asthma required his complete isolation from dogs.

Miles-El next overstates the significance of a grievance response in which a prison counselor said the best solution to Miles-El's complaints was to house him in a non-dog unit. (Step I Grievance Response, R. 1-2, Page ID # 22.) The counselor moved Miles-El to the East side of Chippewa, where dogs were not allowed, and the same response records a medical provider's statement that his dog allergy "ha[d] not been confirmed." (*Id.*) A counselor's effort to resolve a grievance is a far cry from "significant probative evidence," *Pack v. Damon Corp.*, 434 F.3d 810, 813–14 (6th Cir. 2006) (quoting *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002)), that isolating him from dogs was necessary to accommodate a disability or that Defendants in particular subjected him to disability-based discrimination.

More fundamentally, Miles-El's criticism of how the panel handled granular factual issues overlooks that the panel's decision flowed from the lack of evidence to show the particular accommodation sought—being housed at a prison without dogs—was necessary to accommodate Miles-El's asthma. "To prevail under a failure-to-accommodate theory, Miles-El must show that a transfer to a dog-free facility was 'necessary to avoid discrimination on the basis of [his] disability.' " *Miles-El*, 2026 U.S. App. LEXIS 30901, at *11 (quoting *Finley v. Huss*, 102 F.4th 789, 821 (6th Cir. 2024)). "But knowledge of a disability described in general terms does not always reveal specific needs." *Id.* at *13. "Miles-El's failure-to-accommodate claim fails, therefore, because he did not sufficiently document a health condition that required the prison to accommodate him by completely isolating him from dogs." *Id.* at *14.

In summary, the panel recognized Miles-El had asthma. The panel simply held, and properly so, that a need to isolate Miles-El from dogs was neither outwardly obvious nor supported by documentation, and so the failure to transfer him to a non-dog prison did not establish disability discrimination.

## II. En banc review of the ADA and RA claims is not warranted.

The panel's ADA and RA holding is correct and consistent with the law of this Court and its sister circuits. Even if it were not, this case would be a poor vehicle for en banc review.

### A. The panel properly looked to Title I precedent in requiring documentation that Miles-El's asthma necessitated isolation from dogs, and its decision does not conflict with precedent from this Court or any other circuit.

Miles-El challenges the panel's reliance on Title I precedent as a ground for panel rehearing (Pet. at 10–14), and that same alleged error is the basis for his en banc request (*id.* at 14–19). Under Title I, the Sixth Circuit has long held that an employee seeking an ADA accommodation, in certain circumstances, may be obliged to provide medical documentation to show a connection between the accommodation sought and the disability alleged (i.e. some evidence to show the accommodation is needed and would make a difference). *See Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 809–10, 813–14 (6th Cir. 2020) (rejecting ADA claim where claimant provided documentation to confirm a shoulder injury, but no documentation to explain why a work-from-home accommodation was necessitated by the

injury); *Kennedy v. Superior Printing Co.*, 215 F.3d 650, 656 (6th Cir. 2000). The panel recognized that this Court has long applied Title I principles in resolving Title II failure-to-accommodate claims, noted the Title I rule that "an employer may require medical documentation showing that an employee's disability requires the requested accommodation," and held that this principle "is equally warranted under Title II." *Miles-El*, 2026 U.S. App. LEXIS 30901, at *11–13. Consequently, the panel held that, under the circumstances, it was fatal to Miles-El's ADA claim that Defendants asked him to provide some documentation to show a transfer to a dog-free prison was necessary to address his asthma and Miles-El failed to do so. *Id.* at *12–14.

Miles-El argues Title I precedent, *Tchankpa* included, should be divorced from Title II *prisoner* ADA claims. (Pet. 10–14.) His rationale is a policy argument—the ADA and RA would be frustrated by obliging him to seek documentation through prison healthcare because those medical professionals bear some affiliation with prison defendants. (Pet. 13–14 ("Unlike employees in a workplace, who have their own healthcare, the healthcare providers for prisoners . . . are employed by the defendant prison" and "[a]llowing the prison to impose a medical

documentation requirement makes the prison the final arbiter of the ADA's reach, which cannot be right.").)

Miles-El's argument fails on this record. He makes no allegation that he obtained the medical detail Deputy Warden Potila said would support a transfer request. *Miles-El*, 2026 U.S. App. LEXIS 30901, at 5. There is no evidence that he even tried. Moreover, for his asthma, prison providers documented his asthma and treated it with inhalers, steroids, a nebulizer, and a nasal spray. *Id.* at 2. Nothing in the record suggests that those providers' affiliation with the prison affected their medical judgment, much less in a way that would justify imposing on prisoner cases a unique, judicially invented exception to the rule that medical documentation, or a lack thereof, has a place in the disability accommodation analysis.

Miles-El encourages this Court to jettison from prisoner ADA claims any weight given to *the absence* of medical documentation. Yet, this would lead to a landscape where, because all inmate healthcare is tied in some way to the carceral system, the ADA would require courts and prisons to grant accommodations based on the mere say-so of prisoners. This understanding would incentivize inmate requests for

accommodations and put prisons in the position of proving a negative. For example, one could manipulate his removal from a cell to a barracks by alleging a fear of small spaces (claustrophobia), demand a private bathroom by alleging a fear of germs (mysophobia), or force his transfer from a disfavored prison by alleging a fear of dogs (cynophobia). *That* is untenable. Just as the existence of medical documentation is relevant to the analysis, so is its absence.

Miles-El also suggests the panel imposed a blanket documentation requirement on prisoner ADA and RA claims. The panel did no such thing. The panel did not resolve a case with a disability so obvious (for example, blindness, paralysis, incontinence) as to eliminate a need for documentation. Miles-El's chronic-care report instead indicated that inhalers alleviated his symptoms. (R. 1-1, Page ID # 21.) Insofar as generic conditions like pollen, animals, or changes in weather could aggravate his condition, the panel properly recognized that these are "things that everyone encounters in life," present at any prison, dogs or no dogs. *Miles-El*, 2026 U.S. App. LEXIS 30901, at *9. Under *these* circumstances, the dearth of documentation to indicate Miles-El's asthma necessitated his isolation from dogs was fatal to his claim. *Id.*

at *14. To remove any doubt about the scope of its holding, the panel made clear that its rationale did not extend to fact patterns involving obviousness: "Therefore, unless the disability, its resulting limitations, and the necessary accommodation are 'open, obvious, and apparent,' the plaintiff must identify his disability and its resulting limitations to the public entity." *Miles-El*, 2026 U.S. App. LEXIS 30901, at *13–14 (quoting *Windham v. Harris Cnty.*, 875 F.3d 229, 237 (5th Cir. 2017)).

Miles-El lastly insists that recent decisions from sister circuits support en banc review. (Pet. 14–19.) He assigns undue significance to *Adom v. Cal. Dep't of Corr. & Rehab.*, 190 F.4th 823 (9th Cir. 2026) and *McDaniel v. Syed*, 115 F.4th 805 (7th Cir. 2024). But both cases are materially distinguishable. Unlike here, both involved prisoners with an obvious need for accommodation and the accommodations sought obviously served their need. *Adom*, 190 F.4th at 826 (inmate who uses a wheelchair challenged a five-month cutoff of the incontinence supplies the prison had been providing); *McDaniel*, 115 F.4th at 816–19 (inmate with spinal stenosis, who used a wheelchair or four-wheel walker, who sought placement in a no-stairs housing unit). And *McDaniel* rejected the prisoner's separate request for a wet cell to address his incontinence

because "[t]he ADA and the [RA] do not apply when a prisoner simply disagrees with his course of medical treatment." *Id.* at 828. *Adom*, moreover, can hardly be seen as authoritative, as it was a 2-1 decision with a scathing dissent. *Adom*, 190 F.4th at 846 (Bea, J., dissenting).

Nor did the panel here do what *Adom* and *McDaniel* forbid—allow a prison to defeat a claim by relying on its own medical staff's finding that an accommodation was not medically necessary. *Adom*, 190 F.4th at 826–27; *McDaniel*, 115 F.4th at 826 n.15. The panel did not defer to any such finding. It held instead that neither Miles-El's asthma nor the accommodation he sought was open and obvious, and that the record did not show that his asthma, which inhalers relieved, required isolation from dogs. *Miles-El*, 2026 U.S. App. LEXIS 30901, at *12–13. *Adom* itself contemplates a prison will "gather sufficient information from the individual with the disability and, where necessary, qualified experts." *Adom*, 190 F.4th at 836 (citing *Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)).

What is more, the panel decision is not an outlier. Several sister circuits agree that medical documentation, under certain fact patterns, is needed to sustain a claim. *Windham*, 875 F.3d at 236; *Hibbert v. MC*

*Realty Grp., LLC*, 183 F.4th 1013, 1017 (8th Cir. 2026); *Tarquinio v. Johns Hopkins Univ. Applied Physics Lab*, 141 F.4th 568, 575 (4th Cir. 2025). At most, Miles-El identifies differences in how courts have applied a single rule to different facts. That is not a conflict with "an authoritative decision of another United States court of appeals." Fed. R. App. P. 40(b)(2)(C).

Miles-El does not contend that the panel decision conflicts with Supreme Court or Sixth Circuit precedent. As the panel aptly noted, "[w]e have often considered Title I principles that cover employment and Title III principles that cover places of public accommodation when resolving failure-to-accommodate claims under Title II." *Miles-El*, 2026 U.S. App. LEXIS 30901, at *11 (citing *Marble v. Tennessee*, 767 F. App'x 647, 650–52 (6th Cir. 2019); *Johnson v. Dobbins*, No. 22-5310, 2022 U.S. App. LEXIS 31165, at *7–9 (6th Cir. Nov. 8, 2022); *Peroli v. Huber*, No. 21-3202, 2021 U.S. App. LEXIS 34515, at *29–30 (6th Cir. Nov. 19, 2021)). So, although Miles-El homes in on *Tchankpa*, he ultimately advocates for a far more sweeping change to the legal landscape—one divorcing Title II claims from an entire line of precedents that have helped inform them. Such upheaval is uncalled for given that the panel

decision is both well-reasoned and measured in scope. En banc rehearing should accordingly be denied.

### B. The case is a poor vehicle for the en banc review because the full Court would have to decide questions the panel did not reach.

Before the en banc Court could grant Miles-El any relief, it would have to resolve several questions the panel did not reach. Miles-El is no longer incarcerated, *Miles-El*, 2026 U.S. App. LEXIS 30901, at *1, and thus his claims for injunctive relief are moot. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160–61 (2016) ("If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot . . . [a] case becomes moot . . . when it is impossible for a court to grant any effectual relief whatever to the prevailing party.").

Punitive damages are also not available. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002). And although a failure-to-accommodate theory can establish ADA liability, *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 907 (6th Cir. 2004), discriminatory intent is required for compensatory damages, *Gohl v. Livonia Pub. Sch. Dist.*,

836 F.3d 672, 693 (6th Cir. 2016). *See also A.J.T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*, 605 U.S. 335, 344–45 (2025).

Importantly, if the en banc Court reached the damages question, it would have to resolve a question that the panel did not decide and the petition does not present: what showing of intent a plaintiff must make. This Court has assumed, without deciding, that deliberate indifference is enough to show discriminatory intent. *R.K. v. Bd. of Educ. of Scott Cnty.*, 637 F. App'x 922, 925 (6th Cir. 2016). Recently, the Supreme Court described that standard as the majority view of the courts of appeals but declined to decide whether it is correct. *A.J.T.*, 605 U.S. at 344–345; *see also id.* at 351–355 (Thomas, J., concurring) (noting "serious arguments that the prevailing standards are incorrect"). Members of this Court have also disagreed on the question. *Compare Douglas v. Muzzin*, No. 21-2801, 2022 U.S. App. LEXIS 21529, at *23–24 (6th Cir. Aug. 3, 2022) (accepting deliberate-indifference as the standard because it was framed in that manner by the parties), *with id.* at *51–52 (Bush, J., dissenting) (concluding that circuit precedent requires discriminatory animus).

The en banc Court would also face the Eleventh Amendment question the panel did not reach, at least as to the ADA claim. *Miles-El*, 2026 U.S. App. LEXIS 30901, at *15. Title II validly abrogates state sovereign immunity for conduct that *actually* violates the Fourteenth Amendment, and courts decide claim by claim whether it does so for other conduct. *United States v. Georgia*, 546 U.S. 151, 159 (2006). The panel held only that Miles-El had not shown clearly established law on his Eighth Amendment claim. *Miles-El*, 2026 U.S. App. LEXIS 30901, at *7–10. It never decided whether Defendants' conduct actually violated the Constitution, so the Court would have to resolve that question before deciding whether the ADA claim could proceed.

So, though the petition in its best light paints en banc review as limited to whether Title I precedents offer guidance in Title II prisoner ADA claims, review would necessarily open the door to more nuanced issues. The Court could leave these issues for remand, but their presence means en banc review would do little to resolve this case. This consideration further militates against en banc review.

## CONCLUSION AND RELIEF REQUESTED

The extraordinary vehicle of en banc review is unwarranted in this case, and therefore the petition should be denied.

Respectfully submitted,

*/s/ Chris Alex*
Assistant Attorney General
Counsel of Record
Attorney for Defendants-Appellees
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055

Dated: November 10, 2026

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This response to the en banc petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 40(b) because, excluding the part of the document exempted by Federal Rule of Appellate Procedure 32(f), this brief contains no more than 3,900 words. This document contains 3,255 words.

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word 2013 in 14-point Century Schoolbook.

*/s/ Chris Alex*
Assistant Attorney General
Counsel of Record
Attorney for Defendants-Appellees
Corrections Division
P.O. Box 30212
Lansing, MI 48909
(517) 335-3055

## CERTIFICATE OF SERVICE

I certify that on November 10, 2026, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

*/s/ Chris Alex*
Assistant Attorney General
Counsel of Record
Attorney for Defendants-Appellees
Corrections Division
P.O. Box 30212
Lansing, MI 48909
(517) 335-3055